HON. ROBERT RYAN,
HON. JOHN M. RAGAN, } COMMISSIONERS.
HON. FRANK IRVINE,

| | |
|---|---|
| 41 | 1 |
| 44 | 860 |
| 41 | 1 |
| 48 | 555 |
| 41 | 1 |
| 50 | 557 |
| 52 | 199 |
| 54 | 131 |
| 54 | 641 |

---

## UNION PACIFIC RAILROAD COMPANY v. LARS E. ERICKSON.

### FILED JUNE 5, 1894. No. 5516.

1. **Master and Servant:** NEGLIGENCE: PERSONAL INJURIES: QUESTION FOR JURY. The plaintiff was a section man employed by the defendant. He was engaged in repairing the roadway and stepped away from the track to permit a fast passenger train to pass. He stood about twelve feet from the track. As the train passed him a large piece of coal fell from the tender, struck the ground, and, being shattered, a fragment rebounded and struck the plaintiff, injuring him. The evidence showed that it required the full capacity of the tender to store enough coal to supply the engine during its run, and that the tender had been

5                    (1)

loaded to its full capacity from a chute without any precautions as to the safe disposition of the coal in the tender; that it was the fireman's duty to place in safety any coal found in a dangerous position. *Held*, That under these facts it was proper to submit the case to the jury as to whether the company had been negligent in loading the coal.

2. **Negligence.** While the facts justifying an inference of negligence must be established by the evidence and their existence must not be left to the conjecture of a jury, and while ordinarily negligence cannot be presumed merely from the happening of an accident, still facts may be established by circumstances, and the same facts which prove the accident may be circumstances from which the facts justifying an inference of negligence may be found to exist.

3. **Master and Servant:** NEGLIGENCE: EVIDENCE. In such a case evidence tending to show that it was practicable to place railings about the top of the tenders to safely increase their capacity, and that this tender was not provided with such a railing, *held*, to be admissible.

4. ————: FELLOW-SERVANTS: NEGLIGENCE. Employment in the service of a common master is not alone sufficient to constitute two men fellow-servants within the rule exempting the master from liability to one for injuries caused by the negligence of the other. To make the rule applicable there must be some consociation in the same department of duty or line of employment.

ERROR from the district court of Dodge county. Tried below before MARSHALL, J.

A statement of the facts appears in the opinion.

*J. M. Thurston, W. R. Kelly,* and *E. P. Smith,* for plaintiff in error:

The plaintiff has entirely failed to prove any actionable negligence on the part of the defendant's employes in any respect stated in the petition, or to account for the falling or bursting of the piece of coal mentioned therein. Such being the case, it was the duty of the court to have withdrawn the case from the jury, or to have directed a verdict in favor of the defendant in accordance with the request of the defendant. (Patterson, Railway Accident Law, sec. 373;

*Grossenbach v. Milwaukee*, 65 Wis., 35; *Baker v. Madison,* 62 Wis., 137; *Brown v. Kendall*, 6 Cush. [Mass.], 292; *Rockwood v. Wilson*, 11 Cush. [Mass.], 221; *Nitro-Glycerine Case*, 15 Wall. [U. S.], 524; *Burlington & M. R. R. Co. v. Wendt*, 12 Neb., 76; *Stevenson v. Chicago & A. R. Co.*, 18 Fed. Rep., 493; *Morrison v. Phillips & Colby Construction Co.*, 44 Wis., 410; *Ladd v. New Bedford R. Co.,* 119 Mass., 412; *Steffin v. Chicago & N. W. R. Co.*, 46 Wis., 259; *Wood v. Chicago, M. & St. P. R. Co.*, 51 Wis., 196; *Chappell v. Oregon*, 36 Wis., 145; *Payne v. Forty-second & Grand St. R. Co.*, 40 Super. Ct. [N. Y.], 8; *Smith v. Chicago, M. & St. P. R. Co.*, 42 Wis., 526; *De Vau v. Pennsylvania & N. Y. C. & R. Co.*, 28 N. E. Rep. [N. Y.], 532; *Wheelan v. Chicago, M. & St. P. R. Co.*, 52 N. W. Rep. [Ia.], 119; *Chicago, B. & Q. R. Co. v. Barnard*, 32 Neb., 316; *Sorenson, Adm'r, v. Menasha Paper & Pulp Co.*, 56 Wis., 338; *Schultz v. Chicago & N. W. R. Co.*, 67 Wis., 616.)

The court erred in allowing the plaintiff, on cross-examination of the engineer, to show that, after the date of the accident, railings were put around the top of the locomotive tenders belonging to the company. (*Lang v. Sanger*, 76 Wis., 71; *Columbia & P. S. R. Co. v. Hawthorne,* 12 U. S. Sup. Ct. Rep., 591; *McClary v. Sioux City & P. R. Co.*, 3 Neb., 44; *Pickett v. Crook*, 20 Wis., 378; *Cooper v. Milwaukee & P. R. Co.*, 23 Wis., 668; *Couch v. Watson Coal Co.*, 46 Ia., 17; *Lee v. Detroit Bridge & Iron Works*, 62 Mo., 565; 7 Am. & Eng. Ency. of Law, 855; *Galveston, H. & S. A. R. Co. v. Arispe*, 17 S. W. Rep., [Tex.], 47; *Baulec v. New York & H. R. R. Co.*, 59 N. Y., 356; *McKee v. Chicago, R. I. & P. R. Co.*, 50 N. W. Rep. [Ia.], 209; *Loftus v. Union Ferry Co.*, 84 N. Y., 459; *Sjogren v. Hall*, 18 N. W. Rep. [Mich.], 814; *Richards v. Rough*, 18 N. W. Rep. [Mich.], 785; *Schultz v. Chicago & N. W. R. Co.*, 67 Wis., 622; *Atchison, T. & S. F. R. Co v. Howard*, 49 Fed. Rep., 206; *Meyer v. Mid-*

*land P. R. Co.*, 2 Neb., 339; *Chicago & A. R. Co. v. Kelly*, 127 Ill., 627; *St. Louis & S. R. Co. v. Weaver*, 35 Kan., 412.)

If the plaintiff is right in his assumption that this injury arose from a defect in the construction of the tender, or in its management, obvious to himself, or which with ordinary care he might have known, then by continuing in his employment, without demurrer, he assumed such risk and hazard. (*Chicago, R. I. & P. R. Co. v. Londergan*, 7 N. E. Rep. [Ill.], 55; *Minty v. Union P. R. Co.*, 21 Pac. Rep. [Idaho], 660; *Randall v. Baltimore & O. R. Co.*, 109 U. S., 478; *Herbert v. Northern P. R. Co.*, 13 N. W. Rep. [Dak.], 349; *Northern P. R. Co. v. Herbert*, 116 U. S., 642; *Bunt v. Sierra Butte Gold Mining Co.*, 138 U. S., 483; *Howland v. Milwaukee, L. S. & W. R. Co.*, 54 Wis., 230; *De Forrest v. Jewett*, 88 N. Y., 264; *Hughes v. Winona & St. P. R. Co.*, 27 Minn 137; *Fraker v. St. Paul, M. & M. R. Co.*, 32 Minn., 54; *Dowell v. Burlington, C. R. & N. R. Co.*, 62 Ia., 629; *Chicago & N. W. R. Co. v. Donahue*, 75 Ill., 106; *Sweeney v. Central P. R. Co.*, 57 Cal., 15; *Kansas P. R. Co. v. Peavey*, 8 Pac. Rep. [Kan.], 780; *Tuttle v. Detroit, G. H. & M. R. Co.*, 122 U. S., 189; *Bartonshill Coal Co. v. Reid*, 3 McQueen [Scotch App.], 266.)

Had the negligence been shown to exist, and to have been that of the engineer or fireman, then they were fellow-servants with the plaintiff, engaged in the same general business, and under the same employer, and for that reason no recovery can be had. (*Farwell v. Boston & W. R. Co.*, 4 Met. [Mass.], 49; *Murray v. South Carolina R. Co.*, 1 McMullen [S. Car.], 385*; *St. Louis, A. & T. R. Co. v. Triplett*, 15 S. W. Rep. [Ark.], 833; *Tuttle v. Detroit, G. H. & M. R. Co.*, 122 U. S., 195; *Louisville & N. R. Co. v. Collins*, 5 Am. Law Reg., n. s. [Ky.], 265; *Coon v. Syracuse & U. R. Co.*, 1 Seld. [N. Y.], 492; *Wilson v. Merry*, 1 L. R. H. L. Sc., 326; *Brodeur v. Valley Falls*

*Co.*, 17 Atl. Rep. [R. I.], 54; *Union P. R. Co. v. Fort*, 17 Wall. [U. S.], 553; *Waller, Adm'r, v. Southeastern R. Co.*, 2 Hurl. & Nor. Exch. Rep. [Eng.], 109; *Randall v. Baltimore & O. R. Co.*, 109 U. S., 478; *Baltimore & O. R. Co. v. Andrews*, 50 Fed. Rep., 732; *Chicago, M. & St. P. R. Co. v. Ross*, 112 U. S., 377; *Pittsburg & Ft. Wayne & C. R. Co. v. Devinney*, 17 O. St., 198; *Kumler v. Junction R. Co.*, 33 O. St., 150; *Mealman v. Union P. R. Co.*, 37 Fed. Rep., 189; *Hough v. Texas & P. R. Co.*, 100 U. S., 213; *Van Wickle v. Manhattan R. Co.*, 23 Blatch. [U. S. C. C.], 422; *Rohback v. Pacific R. Co.*, 43 Mo., 187; *Armour v. Hahn*, 111 U. S., 318; *Howard v. Denver & R. G. R. Co.*, 26 Fed. Rep., 837; *Clifford v. Old Colony R. Co.*, 141 Mass., 564; *Keyes v. Pennsylvania R. Co.*, 3 Atl. Rep. [Pa.], 15; *Collins v. St. Paul & S. C. R. Co.*, 30 Minn., 31; *Whaalen v. Mad River & L. E. R. Co.*, 8 O. St., 249; *Gormley v. Ohio & M. R. Co.*, 72 Ind., 31; *Pennsylvania R. Co. v. Wachter*, 60 Md., 395; *Houston & T. C. R. Co. v. Rider*, 62 Tex., 267; *Boldt v. New York C. R. Co.*, 18 N. Y., 432; *Blake v. Maine C. R. Co.*, 70 Me., 60; *Coon v. Syracuse & U. R. Co.*, 5 N. Y., 492; *Capper v. Louisville, E. & St. L. R. Co.*, 103 Ind., 305; *Henry v. Staten Island R. Co.*, 81 N. Y., 373; *Russell v. Hudson River R. Co.*, 17 N. Y., 134; *Heine v. Chicago & N. W. R. Co.*, 58 Wis., 525; *Cooper v. Milwaukee & P. C. R. Co.*, 23 Wis., 668; *Toner v. Chicago, M. & St. P. R. Co.*, 69 Wis., 188; *Brown v. Central P. R. Co.*, 7 Pac. Rep. [Cal.], 447; *Besel v. New York C. & H. R. R. Co.*, 70 N. Y., 171; *Valtez v. Ohio & M. R. Co.*, 85 Ill., 500; *Harvey v. New York C. & H. R. R. Co.*, 88 N. Y., 481; *Holden v. Fitchburg R. Co.*, 129 Mass., 268; *King v. Boston & W. R. Co.*, 9 Cush. [Mass.], 112; *Van Wickle v. Manhattan R. Co.*, 32 Fed. Rep., 278; *Gillshannon v. Stony Brook R. Co.*, 10 Cush. [Mass.], 228; *International & G. N. R. Co. v. Ryan*, 18 S. W. Rep. [Tex.], 219; *Elliot v. Chicago, M. & St. P. R. Co.*, 41 N. W. Rep.

[Dak.], 758 ; Cincinnati, N. O. & T. P. R. Co. v. Mealer, 50 Fed. Rep., 725 ; Sullivan v. Mississippi & M. R. Co., 11 Ia., 421 ; Foster v. Minnesota C. R. Co., 14 Minn., 360 ; Capper v. Louisville, E. & St. L. R. Co., 21 Am. & Eng. R. Cas. [Ind.], 527 ; Chicago & N. W. R. Co. v. Moranda, 93 Ill., 302 ; Chicago & A. R. Co. v. Murphy, 53 Ill., 336 ; Indianapolis & St. L. R. Co. v. Morgenstern, 106 Ill., 216 ; Chicago & N. W. R. Co. v. Moranda, 108 Ill., 576 ; Chicago & A. R. Co. v. O'Bryan, 15 Ill. App., 134 ; Dow v. Kansas P. R. Co., 8 Kan., 642 ; Kansas P. R. Co. v. Salmon, 11 Kan., 83 ; Little Miami R. Co. v. Stevens, 20 O., 416 ; Waller v. Southeastern R. Co., 2 H. & C. Exch. [Eng.], 101 ; McAndrews v. Burns, 39 N. J. Law, 117 ; Nashville & D. R. Co. v. Jones, 9 Heisk. [Tenn.], 27 ; Louisville, C. & L. R. Co. v. Cavens, 9 Bush [Ky.], 559 ; Louisville & N. R. Co. v. Collins, 2 Duv. [Ky.], 114 ; Louisville & N. R. Co. v. Robinson, 4 Bush [Ky.], 507 ; Murray v. South Carolina R. Co., 1 McMullan [S. Car.], 385 ; Clarke v. Holmes, 7 H. & N. [Eng.], 937*.)

Frick & Dolezal, contra :

The court did not err in permitting the engineer to be questioned concerning a railing to prevent the coal from falling off the tender. (Cropsey v. Averill, 8 Neb., 152 ; Chicago, K. & N. R. Co. v. Wiebe, 25 Neb., 512 ; St. Louis & S. F. R. Co. v. Weaver, 35 Kan., 412 ; Readman v. Conway, 126 Mass., 374 ; West Chester & P. R. Co. v. McElwee, 67 Pa. St., 311 ; Kansas P. R. Co. v. Miller, 2 Col., 442 ; O'Leary v. City of Mankato, 21 Minn., 65 ; Brehm v. Great Western R. Co., 34 Barb. [N. Y.], 256 ; Westfall v. Erie R. Co., 5 Hun [N. Y.], 75 ; Harvey v. New York C. & H. R. R. Co., 19 Hun [N. Y.], 556 ; St. Joseph & D. R. Co, v. Chase, 11 Kan., 47 ; Atchison, T. & S. F. R. Co. v. Retford, 18 Kan., 245 ; City of Emporia v. Schmidling, 33 Kan., 485 ; Phelps v. City of Mankato, 23 Minn., 279 ; Kelly v. Southern M. R. Co., 28 Minn., 98 ; Sewell v. City of Cohoes, 11 Hun [N. Y.], 626.)

The defendant in error and the engineer and fireman were not fellow-servants within the rule of law in this state which would prevent a recovery against the railway company,—the master of all three. (*Chicago & N. W. R. Co. v. Moranda*, 93 Ill., 302; *Chicago & A. R. Co. v. Kelly*, 21 N. E. Rep. [Ill.], 203; *Indianapolis & St. L. R. Co. v. Morgenstern*, 106 Ill., 216; *Richmond & D. R. Co. v. Norment*, 84 Va., 167; *Moon v. Richmond & A. R. Co.*, 78 Va., 745; *Baltimore & O. R. Co. v. McKenzie*, 81 Va, 71; *St. Louis & S. F. R. Co. v. Weaver*, 57 Am. Rep. [Kan.], 176; *Chicago, St. P., M. & O. R. Co. v. Lundstrom*, 16 Neb., 254; *Sioux City & P. R. Co. v. Smith*, 22 Neb., 775; *East T., V. & G. R. Co. v. De Armond*, 86 Tenn., 73; *Krogg v. Atlanta & W. P. R. Co.*, 77 Ga., 202; *Cooper v. Mullins*, 30 Ga., 146; *Hough v. Texas & P. R. Co.*, 100 U. S., 213; *Priestley v. Fowler*, 3 M. & W. [Eng.], 1; *King v. Ohio & M. R. Co.*, 14 Fed. Rep., 277; *Garrahy v. Kansas City, St. J. & C. B. R. Co.*, 25 Fed. Rep., 258; *Northern P. R. Co. v. Herbert*, 116 U. S., 642; *O'Donnell v. Allegheny V. R. Co.*, 59 Pa. St., 239; *Ryan v. Chicago & N. W. R. Co.*, 60 Ill., 171; *Lewis v. St. Louis & I. M. R. Co.*, 59 Mo. 495; *Darrigan v. New York & N. E. R. Co.*, 52 Conn., 285; *Vautrain v. St Louis, I. M. & S. R. Co.*, 8 Mo. App., 538; *Hall v. Missouri P. R. Co.*, 74 Mo., 298; *Hardy v. Minneapolis & St. L. R. Co.*, 36 Fed. Rep., 657; *Louisville & N. R. Co. v. Brooks*, 83 Ky., 129; *Louisville, C. & L. R. Co. v. Cavens*, 9 Bush [Ky.], 559.)

Irvine, C.

Erickson was employed by the railway company as a section hand and was engaged in his work repairing the road-bed of the railroad near Fremont, when a fast passenger train approached and he stepped aside to let it pass. As the train passed him a large piece of coal fell from the tender of the locomotive, struck the ground near him and broke into smaller pieces, one of which flew towards him,

striking him and causing a fracture of the leg. He brought this action against the railroad company, alleging as negligence that the piece of coal had been negligently allowed to fall from the tender while the train was running at a high rate of speed; that the coal had been negligently loaded and negligently permitted to remain on the tender in a position rendering it liable to fall and to be cast off by the motion of the train. The railway company answered, among other things denying any negligence upon its part and alleging contributory negligence on the part of Erickson. There was a verdict and judgment for Erickson for $1,625.

Probably to follow the order of discussion in the brief of the railway company will disclose the features of the case as well as possible. The first point made is that the evidence did not establish any negligence on the part of the railway company or its employes. The rule of negligence has been so frequently announced by this court that it is hardly necessary to restate it. Questions of negligence and contributory negligence are for the jury where, from the facts proved, different minds may reasonably draw different conclusions. The evidence here tends to show that Erickson, when he saw the train approaching, stepped aside, until he was about twelve feet from the track, and that in so doing he pursued the course customarily resorted to by section men. There is no doubt that a large lump of coal did fall from the tender as the train passed him; that it struck the ground near the track and, breaking into pieces, one portion thereof rebounded and struck him, causing the injury. It is quite clearly established that the lump of coal was no larger than would conveniently go into the fire-box of the engine, and it may be assumed that it was proper to have a lump of such size upon the tender. The train was bound east. The run of the engine was from Grand Island to Council Bluffs, a distance of over 150 miles. Coal was loaded upon the tender at Grand Island. There was no

coaling station for passenger trains between the two points. The tender of this engine would hold from ten to eleven tons, and it required that amount of coal to supply the engine during its run.   The coal was loaded from a chute at Grand Island, and, according to the fireman, the tender was loaded at this time, as usual, before the engineer and fireman mounted the engine.   As he states, "I found it in all ways thrown in, just as they pulled the chute down." It lay "in all shapes, upside down, everyway dropped in there."   From this and from all the evidence it is quite clear that in order to make the run it was necessary to completely fill the tender; that in order to do so the coal was dropped in from a chute without any precautions as to its safe disposition; but the fireman testifies that it was his duty to "wet the coal down;" that for that purpose he mounted the tender before the engine started, and if he saw any coal liable to fall from the tender it was his duty to put it in a place of safety.   According to this witness, about six tons of coal remained in the tender at the time of the accident. The train was a through train and stopped at only a few stations.   We think that this evidence fairly made a case to submit to the jury, under the rule as above stated.

The principal contention on the part of the railroad company is that negligence in loading the coal could not be inferred from the fact that the lump fell from the tender. There is no doubt of the general principle that negligence cannot be inferred merely from the fact that an accident happened, and it is also true that while negligence is an inference to be drawn from the facts proved, facts warranting that inference must be proved, and the jury cannot be left to conjecture the existence of facts which might ground the inference of negligence.   Facts may be established by circumstances as well as by direct testimony, and the same facts which prove the accident may, in some cases, be circumstances which establish the facts justifying an inference of negligence.   So in this case.   Neither fireman nor en-

gineer saw the coal fall. It was certainly not dislodged
from a place of safety by any act of theirs at the time.
Erickson and the section boss did see it fall as the train
passed. It is not merely a conjecture, it is a plain infer-
ence, from the fact that it fell under the circumstances, that
it had been so placed upon the tender that it was in a po-
sition from which it was liable to be dislodged by the mo-
tion of the train. All the evidence shows that it was
necessary to heap the coal up on the tender in order to en-
able it to carry sufficient to make the run. The fireman's
testimony shows that no precautions were taken in loading
to load it safely, and that he was charged with the duty to
inspect the loading and change the position of the pieces
where they were unsafe. The method of loading accounts
for the lumps being in a position of unstable equilibrium,
and unless we disregard the laws of physics we must say
that it had been left in such a position or it would not
have fallen. In this connection we are cited to the case of
*Schultz v. Chicago & N. W. R. Co.*, 67 Wis., 616, a case
arising out of a similar accident. Portions of that decision
are open to criticism; but upon the question of negligence
we do not think that the conclusion was wrong, or that
it conflicted with that we reach. All that the court there
held was that the facts established did not make out a
case of negligence in law. The court did not say that a
jury would not be justified in finding negligence from such
facts. We would say the same,—that the court should not,
under such facts, instruct the jury either that there was or
was not negligence. This was an inference for the jury to
draw. As to contributory negligence, we can see no room
for doubt. Erickson was necessarily near the track. He
had never seen coal fall from tenders. He did not observe
how this tender was loaded, and he was certainly far
enough away to be secure from any ordinary danger to be
apprehended from a passing train properly loaded.

Our attention is here directed to an assignment of error

in regard to the admission of evidence, to the effect that subsequently to this accident railings were put around the tops of tenders belonging to the company. If testimony had been directly admitted to show that fact, a question, to say the least, serious, would be presented ; but the record hardly supports the assignment of error in that regard. We quote all relating to the subject :

Q. The Union Pacific Company—or arrangements can be made by which there. is a kind of railing around the top of the tenders, isn't there?

A. Well, I should answer that that there could be arrangements made.

Q. Would not you answer that they have got such railing around the top of the tenders?

A. They have at this time, but we did not then.

These questions and answers were objected to. They occur in the cross-examination of the engineer, who was called by the company. They were followed by some questions, without objections, as to the purposes for which these railings were placed upon the tenders. Such evidence tended to show that they were to increase the capacity of the tender. When the questions objected to are examined it will be found that there was no inquiry in regard to subsequent acts of the company. The first question merely asked if it was practicable to use a railing. The second asked whether the company had not such railings around the tenders, without specifying the time. The statement that they had been placed there since the accident was the engineer's answer, and from his use of pronouns it is not clear whether he meant that all tenders had been so provided since the accident, or whether he meant to say simply that his engine did not have one at that time. We do not think this testimony is open to the objection urged. The feature objected to was really introduced by the company itself upon redirect examination as follows :

Q. Now, with regard to this railing that Mr. Frick has

spoken about, were such railings used at the time of that tender, at that time, that you knew of?

A. No, sir.

Q. Do you know of any other passenger engine at that time?

A. I don't remember, but I think they were putting them on. I would not say positively.

The peculiar construction both of these questions and their answers still leaves the same doubt as to the meaning of the evidence; but when we consider the evidence as to the capacity of this tender and the amount of coal required, together with the evidence just referred to, it would seem that the railings were found necessary to prevent overloading and that the company then realized this fact. This much was certainly material and tended to establish the negligence complained of.

The next contention is that if the accident resulted in the manner c'aimed by the plaintiff it was a matter obvious to him, and that continuing in the employment he submitted to the hazard thereof, but, as already stated, he never knew such an accident to happen; moreover, he knew nothing about the manner of loading the tenders. These were matters wholly foreign to that portion of the company's work in which he was engaged, and this argument ill accords with the further argument made, that the company could not be held liable unless it had been informed by the previous occurrence of similar accidents that this manner of loading the tenders was dangerous. Neither argument is well founded. The former, for the reason that Erickson did not know, was not bound to know, and was not in a position to know the danger. The latter, for the reason, if for no other, that it must occur to every one of ordinary judgment that the natural and probable consequence of an insecure load of coal upon the tender of an engine running at a high rate of speed might be the falling of coal therefrom and consequent injury to persons at sta-

tions and workmen necessarily engaged near the track.  It would not require the actual happening of such an event to apprise one of the danger.

The next proposition is that Erickson was a fellow-servant of whoever was guilty of negligence, and that the company is, therefore, not liable.  Upon this subject elaborate briefs have been filed upon either side reviewing nearly all the American authorities.  We shall not here undertake such a review.  We are aware of the hopeless conflict existing.  In fact a study of the question must convince any one that shortly after the introduction of railways the law entered upon a slow but marked period of transition upon the subject of fellow-servants.  No definite result has yet been reached.  Probably the leading case, both in America and in England, applying the doctrine of fellow-servants to all the employes of a common master, is that of *Farwell v. Boston & W. R. Co.*, 4 Met. [Mass.], 49. All the cases holding that broad doctrine seem to be based directly or indirectly upon the authority or the reasoning of Chief Justice Shaw in that case.  It was decided in 1842, before the railway system of the country was developed, before the existence of other large corporations employing vast numbers of men engaged in the pursuit of one general object, but performing different functions and engaged in many distinct departments.  This state of affairs was then just arising, and the vast change of conditions in the relations of master and servant was only then beginning to appear.  The extent of that change and the consequences of applying old rules to new conditions could not then be foreseen.  In that case, as in all others upon the subject, the reasons for the rule exempting masters from liability to servants for injuries produced by the negligence of their fellow-servants are stated as twofold: First, that such injuries must be presumed to be within the contemplation of the parties when they made their contract; and second, that public policy requires the enforcement of such

a rule, upon the theory that by enforcing it each servant is made closely observant of the acts of his fellow-servants, and that the scrutiny of one another naturally tends to efficiency and care. The first reason given, where the rule is sought to be applied without discrimination to all servants of a common master, has already been completely set aside and disregarded, even by those courts in America most inclined to conservatism upon the subject. It is everywhere conceded that inasmuch as a corporation can only act through agents and all agents are servants, the logical application of the rule would discharge a corporation entirely from liability to its servants, and this gives rise to a corollary that where the negligence is that of a vice-principal whose acts must be taken as those of the master, the rule does not apply. The recognition of this exception was necessary to preserve another rule, that while a servant assumes the dangers incident to his employment, he does not assume dangers caused by the negligence of his master. There is as much reason for holding that a servant in entering an employment contracts with a view to possible negligence of the master as to hold that he contracts with a view to possible negligence of the man who works beside him and upon the same footing. To illustrate by reference to railways, which probably afford as great a variety of grades in employment as any occupation. Can it be logically said that a section man in the matters within the scope of his employment is less liable to err than a conductor, superintendent, or general manager with reference to his own duties? To the writer's mind, when the first distinction was drawn between grades of servants, the force of the general rule, so far as it was based upon contract, was destroyed. As to the second reason,—that founded upon public policy,—there is much force in the observation of Mr. Justice Field in *Chicago, M. & St. P. R. Co. v. Ross*, 112 U. S., 377: "It may be doubted whether the exemption has the effect thus claimed for it. We have never

known parties more willing to subject themselves to dangers of life or limb because, if losing the one, or suffering in the other, damages could be recovered by their representatives or themselves for the loss or injury. The dread of personal injury has always proved sufficient to bring into exercise the vigilance and activity of the servant." Still we concede that there may be some force to the rule so far as grounded upon public policy and confined to servants who are, in the language of the supreme court of Illinois, "consociated by means of their daily duties or co-operating in the same department of duty or the same line of employment." (*Chicago & N. W. R. Co. v. Moranda*, 93 Ill., 316.) Beyond this line we can see no force in it. When the authorities are examined it is found that they range themselves in two general classes, those following the opinion of Chief Justice Shaw and those distinguishing between grades of employment, and employes in distinct departments of service. The principal objection urged to the latter class is that by adopting such distinctions the courts overthrow a general rule of easy application and adopt one not susceptible of precise application and uncertain in its results. Possibly this objection is well taken. If so, we can only say that it accords with the general spirit of the common law. Perhaps the main distinction between the civil law and the common law is that the civil law is based upon well-defined logical rules readily susceptible of ascertainment, while the common law is founded upon broader general principles, to be applied to the diversity of human affairs in such a manner as to favor individual liberty and to conform themselves to changed conditions. When the law of fellow-servants was first announced business enterprises were comparatively small and simple. The servants of one master were not numerous. They were all engaged in the pursuit of a simple and common undertaking. Now, things have changed. Large enterprises are conducted by persons or by corporations employing vast numbers of

servants divided into classes, each pursuing a different portion of the work, and each practically independent of the other. The old reasons do not apply to the new conditions. We are not prepared in this case to propose any set rule for always determining when two employes are fellow-servants within the meaning of the law and when they are not, nor are we required for present purposes so to do. Erickson was a section man. He was employed with several others to keep the road-bed and the track in repair. The fireman was employed to fire the engine and perform certain duties in connection with the operation of trains. Some one was employed at Grand Island to load the tenders with coal. With either the fireman or this third person Erickson had nothing in common, except that he drew his pay from a common source, and that in a broad sense they were all carrying out parts of a vast transportation business. Erickson had no control over either of the others, no opportunities of judging of their competency, no supervision of their specific acts, and only by adopting the broadest rule as announced by Chief Justice Shaw could we hold them to be fellow-servants. This rule we are not prepared to adopt. We hold on the contrary that employment in the service of a common master is not alone sufficient to constitute two men fellow-servants within the rule exempting the master from liability to one for injuries caused by the negligence of the other, and that to make the rule applicable there must be some consociation in the same department of duty or line of employment. For the purposes of this case we are content to follow the opinion of Mr. Justice Miller in *Garrahy v. Kansas City, St. J. & C. B. R. Co.*, 25 Fed. Rep., 258, where, in the light of quite recent decisions and of the mature judgment of the supreme court of the United States in *Chicago, M. & St. P. R. Co. v. Ross, supra,* he held that persons occupying such relations were not fellow-servants within the meaning of the rule.

The other errors discussed in the briefs relate to the giving and refusal of instructions. If we are right in the conclusions reached on the branches of the case already discussed, there was no error in the instructions, as those given and refused, so far as they are complained of, simply relate to those questions.

JUDGMENT AFFIRMED.