JOHN RILEY, APPELLEE, V. CUDAHY PACKING COMPANY, APPELLANT.

FILED SEPTEMBER 16, 1908.   No. 15,278.

1. Master and Servant: APPLIANCES: DUTY OF MASTER.  It is the duty of_ a master to exercise reasonable care to provide a reasonably safe place for his servant to work, and to exercise the same degree of care to keep it reasonably safe, and to that end it is his duty to make seasonable and timely inspection of the premises.

2. ———: NEGLIGENCE: QUESTION FOR JURY.  In a passageway frequently used by his servants in the performance of their duties, a master permitted for a year or more a steel plate two inches thick and nine feet square to stand on edge in such a position that it was nearly balanced, and slight force was sufficient to cause it to topple over, and it fell across the passageway and injured one of his servants.  *Held* to be a question of fact for the jury whether the master was guilty of negligence.

3. ———: INJURY: EVIDENCE.  Where a large steel plate toppled over and injured an employee, it is not necessary that any witness should testify directly as to the cause of its falling.  It is sufficient if the jury may from the facts and circumstances proved ascertain the cause with reasonable certainty.

4. ———: CONTINUANCE OF RELATION.  In a manufacturing establishment, where on account of the nature of their work it was impracticable for the employees to leave the building for their noonday meal, and the master allowed but 30 minutes for their lunch, and it was contemplated by their contract of employment that they should remain in the building where they worked to eat their lunch, *held*, that the relation of master and servant continued during the 30 minutes allowed for lunch.

APPEAL from the district court for Douglas county: LEE S. ESTELLE, JUDGE.  *Affirmed.*

*Greene, Breckenridge & Matters,* for appellant.

*Smyth & Smith, contra.*

GOOD, C.

John Riley, the plaintiff, brought this action in the district court against the Cudahy Packing Company to

recover for personal injuries sustained by the plaintiff while in the employ of the defendant. Plaintiff alleged that the injuries were caused by the negligence of the defendant in the performance of its duties as master. Plaintiff had judgment, and the defendant has appealed.

The defendant in its packing plant, in South Omaha, operates what is known as the "fertilizer department." Two large rooms on the ground floor are devoted to this department. In one of these rooms are situated three ovens or dryers, and a brick chimney about 10 feet square. The dryers are about 10 feet wide, 25 feet long, and 8 feet high, and are incased with brick and arched over the top. These ovens, or dryers, contain large cylinders in which the fertilizer material is crushed and dried. When the machinery is in operation, it causes the dryers to vibrate considerably, and has the effect of making the floor and the building tremble to some extent. It is not shown, however, that the vibration affected the chimney. One of these dryers was situated near the brick chimney, leaving a passageway from four to six feet wide between the dryer and the chimney. A year or more previous to the injury a steel plate, about two inches thick and nine feet square, and weighing several thousand pounds, was stood on edge in said passageway and leaned against the chimney. It was placed close to the chimney in nearly a perpendicular position. This plate had formerly formed the base of a chimney, but was no longer used for any purpose, and was stood against the chimney apparently for no other purpose than to get it out of the way. It appears that the odors from the manufacture of the fertilizer are very offensive, and the employees in this department require two suits of clothes. On going to their work in the morning they change their usual clothes for the ones they wear while at work, and on leaving their work in the evening they change their work clothes for their usual clothes. It also appears that the defendant allowed but 30 minutes for the employees to eat their noonday meal. On account of the offensive odors with which their work

clothes were reeking, it was not desirable for the workmen to leave the building in their work clothes for their lunch, nor was it practicable in the short time allowed to change their clothing and go elsewhere for lunch. Under these circumstances, the workmen were practically required to bring their lunches with them and eat them in the building. The defendant had constructed metal lockers for the use of its employees, in which they stored their usual clothing and their dinner pails. These lockers were constructed on either side of the chimney. It was necessary for the workmen to traverse the passageway between the chimney and the dryer in going to and from these lockers, and in doing so they passed by and saw the steel plate several times a day. No particular place was set apart or assigned in which the workmen might eat their lunches, but it had long been a custom in cold weather for the men while eating their lunches to sit either at the base or on top of the dryer near the chimney. The men ascended to the top of the dryer by means of a short stepladder. On the 13th day of March, 1905, the plaintiff and other workmen sat on top of this dryer and ate their lunches. About the time they had finished their meal a whistle was blown, which was a signal for them to resume their labor. The men on top of the dryer descended; the plaintiff being the last one. As he was descending the stepladder the steel plate above referred to toppled over and fell upon him, crushing him against the stepladder and the dryer and inflicting severe injuries. The evidence shows that up to and at the time of the accident the steel plate appeared to be in the same position and condition that it had been for more than a year. Some of the witnesses testified that it stood close against the chimney in an upright position. Others testified that the bottom of the plate was some 12 inches from the base of the chimney, and the top of the plate leaned against the chimney. No one testified directly as to what caused the steel plate to fall. It appears that the plate was never braced nor

in any way secured to the chimney. While the evidence shows that the vibration of the machinery affected the dryers and the floor and caused them to tremble, no one testified directly that any vibration of the chimney or of the steel plate leaning against it was ever observed. The plaintiff charges that the defendant was negligent, first, in placing the steel plate in a position where, if it fell, it was likely to injure some of the employees in that department; second, in failing to brace the plate or so secure it as to prevent it from falling; third, in failing to make seasonable examination and inspection of the premises, so as to ascertain whether there was danger of the plate falling. On the other hand, the defendant insists that the evidence does not show how or why the accident happened, and that plaintiff has, therefore, failed to make a case, and that the evidence does not show that the defendant was negligent.

This court has frequently held that it is the duty of a master to use reasonable care to provide a reasonably safe place for his servant to work. In *Rombold v. New Omaha T.-H. E. L. Co.*, 68 Neb. 71, it was held: "Ordinarily, in providing his employees with a place to work, or tools and appliances with which to work, an employer is bound to exercise reasonable care to insure the safety of such employees. The foregoing duty is a continuing one, and the employer is also bound to keep such place, tools and appliances in a reasonably safe condition, and to make seasonable inspection with that end in view." With respect to the duty of the master to make inspection, Labatt, in his work on Master and Servant, sec. 155, says: "The master's liability depends upon the answer to the following questions: (1) Whether the conditions which caused the injury were discoverable by an examination of a reasonably careful character. (2) Whether any examination of the instrumentality had ever been made. (3) Whether the examinations which were actually made were made as frequently as was proper. (4) Whether there were any circumstances which would have suggested to

a prudent man the advisability of making a special examination during the interval between two of the regular examinations.    (5) Whether the regular or special examinations which were actually made were as thorough as the circumstances demanded." In *Brann v. Chicago, R. I. & P. R. Co.,* 53 Ia., 595, it is said: "Negligence on the part of the corporation may consist of acts of omission or commission, and it necessarily follows that the continuing duty of supervision and inspection rests on the corporation; for it will not do to say that, having furnished suitable and proper machinery and appliances, the corporation can thereafter remain passive.    The duty of inspection is affirmative, and must be continuously fulfilled, and positively performed.    In ascertaining whether this has been done or not the character of the business should be considered, and anything short of this would not be ordinary care."    Both upon reason and authority it is clearly the duty of the master to exercise reasonable care to provide a reasonably safe place for his servant, and to exercise reasonable care to keep it reasonably safe, and to that end it is his duty to make seasonable and timely inspection.    The master's obligation does not cease when he has provided a safe place, but he is still required to use reasonable care to keep the place reasonably safe.

Defendant insists that, as no witness directly testified as to what caused the plate to topple over, there is no evidence that would warrant submitting the case to the jury.    The evidence tends to show that the plate was in nearly a perpendicular position, and that it was not braced or in any way fastened.    There was no evidence of any unusual or extraneous force being applied to the plate to make it fall, but it fell without the application of any such force.    That such a plate leaning in a slanting position against a stable brick wall would not topple over without the application of considerable force is too plain to admit of argument.    That it fell without the application of any force or power exerted against it is evidence tending very strongly to show that the plate was not in

a slanting position leaning against the chimney, but rather that it was in a state of unstable equilibrium, and that it was so nearly balanced on its base as to be easily toppled over. It was shown that there was considerable vibration at times, and that it made the large dryers shake violently, and that the vibration was sufficient to affect the floor upon which the plate stood. This evidence, we think, was clearly sufficient to warrant the jury in finding that the vibration of the machinery caused the plate to topple over and fall upon the plaintiff.

The question of whether defendant was negligent in so placing the plate that it might fall, or in permitting it to stand for a long time in a position where it might fall, and thereby injure its employees, was one of fact. The evidence shows that defendant had permitted the plate to stand for a long time in such a position that it might fall, and that it had been a source of danger for a year or more. While in this position the plate toppled over and inflicted the injuries complained of. From the evidence we think it is apparent that proper inspection would have disclosed the liability of the plate to fall. We think it must be conceded that it is negligence to knowingly permit a large plate weighing several thousand pounds to remain standing by the side of a much used and frequented passageway, in such a position that it was likely to fall on or across the passageway, or that it might be caused to fall by the vibration of the machinery. The evidence warranted the finding that seasonable inspection would have disclosed the danger, and that the defendant was negligent in failing to make such inspection.

Defendant insists that negligence may not be proved by the fact of the accident alone. Such is undoubtedly the rule. But the negligence may be inferred from the surrounding facts and circumstances. In *Union P. R. Co. v. Erickson*, 41 Neb. 1, 10, plaintiff was injured by a lump of coal falling from the tender of a passing locomotive. The coal had been loaded on the tender many miles distant from the injury. In that case this court said:

"Facts may be established by circumstances as well as by direct testimony, and the same facts which prove the accident may, in some cases, be circumstances which establish the facts justifying an inference of negligence. So in this case. Neither fireman nor engineer saw the coal fall. It was certainly not dislodged from a place of safety by any act of theirs at the time. Erickson and the section boss did see it fall as the train passed. It is not merely a conjecture, it is a plain inference, from the fact that it fell under the circumstances, that it had been so placed upon the tender that it was in a position from which it was liable to be dislodged by the motion of the train." See, also, *Union Stock Yards Co. v. Goodwin,* 57 Neb. 138, and *Choctaw, O. & G. R. Co. v. McDade,* 191 U. S. 64.

Defendant argues that, if the dangerous condition of the plate was open and obvious, then the plaintiff must have known of it, and by not complaining assumed any risk of danger. It was not the duty of the servant to inspect. That duty belonged to the master. The servant had a right to assume that the place afforded by the master for the performance of his duties was reasonably safe. He was not required to look for danger, and we cannot say, as a matter of law, that the liability of the plate to fall was so apparent that one who had no duty to inspect was bound to discover it. That was a question of fact to be determined by the jury from the evidence. The jury having found against the defendant upon that proposition, the defendant is concluded by its finding.

The defendant further contends that the relation of master and servant did not exist at the time of the accident, and, therefore, the rule requiring the master to furnish a reasonably safe place and appliances for his servant had no application. In this view we can not concur. It appears that the defendant was desirous of having its plant operated with the smallest loss of time possible for lunch, and that it allowed but 30 minutes for lunch. It also knew that, because of the offensive odors, the workmen could not be expected to go to their homes or outside

of the building to take their noonday meals without changing their clothing. It was not practicable for the workmen within the time allowed to change their clothing and go elsewhere for their meals. The defendant provided lockers, safe receptacles in which the workmen placed their clothing and lunch pails. We think it was fairly contemplated by their employment that the workmen should remain in the building and eat their lunches there. No particular place was provided wherein they should eat their lunches, but the defendant knew by long custom that the workmen ate their lunches in this particular place. It knew or should have known of the dangerous condition of the steel plate, and that it was liable to fall upon and injure them. We do not think it can be said that the workmen were mere licensees, as contended for by the defendant, but they were there as a matter of right and by the invitation of the master. It was necessary that the workmen should eat in order that they should have strength to labor, and we think that the workmen were entitled to the same protection and the same care of the master during the time they were taking their lunches upon the premises as they were while they were actually at their labor.

Some complaint is made by the defendant with reference to the admission and rejection of certain testimony. Defendant has not pointed out wherein it was in anywise prejudiced by such rulings, and we are unable from an examination to detect any prejudice or any error in the rulings complained of. We find no error in the record, and recommend that the judgment of the district court be affirmed.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.