Walter R. Hart, J.
Defendant City of New York appeals from a judgment in plaintiff’s favor entered on a jury verdict. Defendant Berkenfeld failed to appear or answer and the trial insofar as it related to this defendant proceeded as an inquest.
The action was brought to recover damages for personal injuries sustained by plaintiff as a result of tripping and falling over the legs of Berkenfeld, an employee of the Park Department, while he was sitting on a path eating his lunch and reading a newspaper.
Plaintiff, a lady 85 years of age, testified that the accident happened at the underpass of Belt Parkway at 230th Place and South Conduit Avenue, on August 6, 1957 at 12:30 p.m. She went doAvn a flight of steps and as she went to “ turn around ” to the right to enter the tunnel there was a man sitting on the concrete path Avith his legs stretched out near the edge of the tunnel. 11 His legs were stretched out like that and you go to turn and over you Avent. ’ ’ Alongside of the man was a push broom and a shovel. He was reading a newspaper and eating his lunch. She testified that the accident occurred after she had come down the steps and turned the corner into the tunnel. She did not see the man or his protruding legs until after she tripped and fell to the ground, sustaining injuries.
Defendant Richard Berkenfeld, subpoenaed as plaintiff’s witness, testified that the accident occurred someAvheres between 11:00 a.m. and 12:30 p.m. He had reported for work át the Boulevard Park Garage about five blocks from the tunnel at about 7:20 a.m. He left the garage about 9:00 a.m. to clean up the underpass, taking with him a broom and shovel Avith which to do it. When he received these implements his name was put on a list and when they were returned in the afternoon his name was scratched off and he was responsible for them if they were not turned in. This was the third or fourth time that he had been given this assignment.
*1086 Prior to the time of the accident he had worked two and one-half to three hours. Then, about 11 or a quarter of 11 or it could have been 12 o’clock, he “ figured it was time for lunch ”. He sat down and ate his lunch and read his paper. After the accident he continued to do the sweeping. The witness further testified that when he reported for work he was not given specific instructions as to when his lunch hour was to begin. He was permitted to eat his lunch on the job and usually ate between 11:00 and 11:30 a.m.
When plaintiff rested defendant city moved to dismiss on the ground that since Berkenfeld was eating lunch at the time of the accident he was not acting in the course of his employment and that, therefore, the doctrine of respondeat superior was not applicable. The court denied the motion stating that it would submit the issue to the jury as a question of fact. Defendant thereupon rested on plaintiff’s case. The jury returned a verdict for the plaintiff in the sum of $1,250.
Upon this appeal no question is raised as to defendant Berkenfeld’s negligence or plaintiff’s freedom from contributory negligence. The sole issue with respect to liability raised by appellant is whether Berkenfeld was acting in the course of his employment at the time of the accident. In my opinion the ruling of the trial court was correct and the proof submitted created a question of fact as to this issue, and it may not be said in the state of the record that as a matter of law there was no basis for the finding made.
To sustain its position defendant, citing Corpus Juris Secundum (Master and Servant, vol. 57, § 570, subd. d, par. 3, p. 308) and other authorities, asserts that an employer is not liable for the acts of a servant at a time when he is off duty and not serving the master, e.g., taking time away from work for meals. While this general statement is valid (Rosenberg v. Syracuse Newspapers, 248 App. Div. 294), special circumstances and conditions of the employment may be such that the partaking of meals by the employee may be said to be an incident of, and in the course of, his employment.
In' the case here on appeal Berkenfeld was allowed but 30 minutes for his meal. He was charged with the responsibility for the safe return of the equipment. Unless he kept the equipment with him and ate at the site of his employment he would be required to walk five blocks back to the garage to check in the equipment before lunch, then return the same distance with his tools after completing his meal. The allotted time would hardly be sufficient to permit of such a schedule. The circumstance, therefore, that he was required to check in his equipment at the *1087 end of the day indicates that it was contemplated by the parties that he would have his lunch at the site of his work with the equipment in his custody and that, therefore, he would be acting in the course of his employment, or at least a jury could so find. An additional salient fact is his direct testimony that he was permitted to eat his lunch on the job.
There are many cases that are apposite to the conclusion reached. In Riley v. Cudahy Packing Co. (82 Neb. 319) plaintiff was injured while eating his lunch on the premises of his employer, through the negligence of the latter. In a common-law action for damages the position taken by the employer was that since plaintiff was not actually working at the time of the accident he was serving his own purpose by eating his meal; that plaintiff was, therefore, a licensee and not an invitee or employee to whom was owed the duty of reasonable care in furnishing him with a reasonably safe place to work. In overruling this contention the court stated (pp. 325-326): “ It appears that the defendant was desirous of having its plant operated with the smallest loss of time possible for lunch, and that it allowed but 30 minutes for lunch. It also knew that, because of the offensive odors, the workmen could not be expected to go to their homes or outside of the building to take their noonday meals without changing their clothing. It was not practicable for the workmen within the time allowed to change their clothing and go elsewhere for their meals. The defendant provided lockers, safe receptacles in which the workmen placed their clothing and lunch pails. We think it was fairly contemplated by their employment that the workmen should remain in the building and eat their lunches there.” Similarly, where the same issue was presented to the court in Thomas v. Wisconsin Cent. Ry. Co. (108 Minn. 485, 490-491) the court stated:
‘1 But it is further claimed that plaintiff was not at the place provided for the performance of his work, but, on the contrary, was at the boiler for his own convenience; that he was not a servant of defendant at the time, but a mere licensee, and entitled to no protection as a servant. A large number of cases are cited in support of this contention, and, if sound, it disposes of the case adversely to plaintiff’s right of action. The position, however, does not meet with our view of the law. The authorities are hopelessly at variance upon this point, though, as we believe, the weight of reason is opposed to the view of defendant. The authorities are collected in a note to Taylor v. Bush, 12 L. R. A. (N. S.) 853.
.“In the case at bar it appears the defendant’s employees were given a half hour for the noon rest; that each employee *1088 brought his luncheon with him and ate it upon defendant’s premises in the vicinity of the work; that the men were expected to remain upon the premises, and did so remain with the knowledge, consent, and upon the implied invitation of defendant, picking out such dry places upon the premises as could be found, lighting a small fire, heating their coffee, and partaking of their lunch. These facts appear, not only from the testimony of plaintiff’s witnesses, but also from the testimony of defendant’s foreman in charge of this particular work. Under such circumstances a majority of the courts hold that the relation of master and servant remains intact, extending to the servants the same rights as when actually engaged in their work. ’ ’ (Cases cited.)
In Cleveland, Cincinnati, Chicago & St. Louis R. R. Co. v. Martin (13 Ind. App. 485) the issue similarly was whether an employer had violated the duty of furnishing his employee with a reasonably safe place to work and the question at issue was whether the injured party was an employee (who was eating his meal) or was merely a licensee to whom the employer only owed the duty of refraining from willful harm. The court there stated (pp. 494r-495):
‘1 In this connection, it should be remembered, the finding shows that the interval of thirty minutes was allowed the employes for dinner. It is also found that the time so allowed the employes for that purpose was too short to enable them to leave the premises. There was, therefore, an implied invitation to said decedent by the appellant, under the circumstances, to eat his dinner on the premises. "When, as in this case, so brief an interval is allowed the employe in which to eat his dinner that he cannot leave the premises of his employer for that purpose, his act in eating his dinner on the premises is an incident to the service. The mere fact that "William Manifee was not under the circumstances at work as a section hand on the track of the railroad at the moment he was injured, is not conclusive that the relation of master and servant did not exist at the time.
“ In this connection we quote from the opinion of Judge Dailey, in Pennsylvania Co. v. McCaffrey, Admx., 139 Ind. 430, as follows:
‘ ‘ ‘ The law of nature is inexorable in its demands. The cravings of hunger must be appeased. The laws of humanity declare that every man, fit to be a member of a train crew, must have three meals, some rest, and eight hours’ sleep a day. The appellee well says: “ Deprived of these requisites of intelligent life, a soldier becomes a coward; a workingman, a drone.” * * * Every statute and employer’s rule is made in the *1089 presence of and subject to the laws of nature. Hunger, thirst, and sleep are imperative, ’ etc. In this case it was ‘ understood that the employes must of necessity ’ eat the dinner they brought with them on the premises during the brief interval allowed for that purpose. It would be unreasonable and unconscionable to hold that section hands on railroads, who of necessity and by universal custom in this country, carry their dinners with them when they go to work in the morning, in 1 tin buckets,’ are not on the premises, where they are engaged at work, during the brief time they are allowed at noon in which to eat their dinner, by invitation, implied if not expressed, of the employer.
‘1 It cannot be said we think, that an employe is not in the line of his duty when under such circumstances he remains on the premises of the master where he is engaged in his work during the brief interval allowed the employe by the employer for the purpose of enabling him to eat his dinner.” (Cases cited.)
The reasoning in Riley and Thomas (supra) was approved by the Court of Appeals in dictum in Matter of McInerney v. Buffalo & Susquehanna R. R. Corp. (225 N. Y. 130, 132). (See, also, Matter of Bollard v. Engel, 254 App. Div. 162; cf. Tobin v. Grant Co., 9 A D 2d 691; Ann. 36 A. L. E. 909.)
The cases cited by appellant are inapposite. In each of them the'conduct of the employee resulting in the injuries to the plaintiffs occurred when the employees terminated or abandoned their services to their employer and were serving their own ends exclusively. Among the cases cited by the appellant are several from California.
The result arrived at here would seem, however, to be buttressed by the more recent California case of DeMirjian v. Ideal Heating Corp. (129 Cal. App. 2d 758). There the District Court of Appeals reversed a nonsuit in an action for property damages allegedly caused by the negligence of one of defendant’s employees in the filling of a cigarette lighter and causing it to spark in the presence of a highly volatile material. The court there stated (pp. 764-766):
‘ ‘ Under the doctrine of respondeat superior, an employer is liable for injury to the property of another proximately resulting from the negligent act of his employee done within the course of his employment^ An employer is responsible not only for the negligent act of his employee done within the course of his employment, but also for the wrongful act of his employee committed in and as a part of the transaction of the business of the employer. [Cases cited.]
“ The definitive limits of the phrase ‘ in the course of employment ’ are uncertain. The determination of what conduct of an *1090 employee is within, the course of his employment is largely dependent on the facts and circumstances of the particular case. * *
“ Acts necessary to the comfort, convenience, health, and welfare of the employee while at work, though strictly personal to himself and not acts of service, do not take him outside the course of his employment. Cessation of work for eating, drinking, warming himself, and similar necessities are necessary incidents of employment. In these and other conceivable instances the employee ministers unto himself, but in a sense these acts contribute to the furtherance of his work. ‘ That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents. Such dangers as attend them, therefore, are incident dangers. At the same time injuries occasioned by them are accidents resulting from the employment.’ [Citing cases.]
‘1 A mere deviation by an employee from the strict course of his duty does not release his employer from liability. An employee does not cease to be acting within the course of his employment because of an incidental personal act, or by slight deflections for a personal or private purpose, if his main purpose is still to carry on the business of his employer. Such deviations which do not amount to a turning aside completely from the employer’s business, so as to be inconsistent with its pursuit, are often reasonably expected and the employer’s assent may be fairly assumed. In many instances they are the mingling of a personal purpose with the pursuit of the employer’s business. In order to release an employer from liability, the deviation must be so material or substantial as to amount to an entire departure. [Citing case.] * * *
“ Defendant’s business required the usage of spatter thinner, a highly explosive and inflammable substance, and it was attended by the risk that smoking on the part of an employee would set fire to the thinner and the paints. Whether it was a reasonable act and in the course of Impelía’s employment for him to attempt to fill his cigarette lighter from the filler drum was a question of fact. It was for the jury to say whether the deviation was so material or substantial as to constitute a complete departure from defendant’s business. It could have been found that there was a mingling of a personal purpose with the pursuit of defendant’s business. Impelía had not necessarily assumed a status distinct from that of an employee and for the time being had put off his general status as an employee. He was not, as a matter of law, doing something outside the sphere of his employment. We are of the opinion that an inference can *1091 reasonably be drawn from the evidence that Lupella’s act was done in the course of his employment. Whether such inference should be drawn was a question for the jury” (p. 772). (Cf. Bluestein v. Scoparino, 277 App. Div. 534.)
Thus, in the action here on appeal it was for the jury to determine whether an inference was to be drawn from the evidence as to whether Berkenfeld’s act of eating his lunch was an incident of, and in the course of, his employment.
Appellant also urges that the verdict in plaintiff’s favor was excessive. Respondent interposes as a jurisdictional objection the contention that this court may not review the matter, the argument advanced being that, since it was not presented to the court below, it may not be considered here for the first time. In my opinion this contention is valid. An appellate court sits only to review and correct errors in the court below and an appellant, upon an appeal, is confined to questions and issues which were litigated at the trial. “ Underlying this rule are the well-settled principles that a defect in a party’s case or practice should be pointed out on the trial, so that he may obviate it if he can, and that the trial court should ordinarily be given a chance to correct its errors before the proceedings are transferred to another tribunal for review.” (9 Carmody-Wait, New York Practice, p. 27.) An apt illustration of the application of this rule is found in Reilly v. Kanenbley (202 App. Div. 183). There a verdict in plaintiff’s favor had been set aside by the trial court on defendant’s motion and the complaint was dismissed. On plaintiff’s appeal the order was reversed and the verdict reinstated. On the appeal plaintiff for the first time urged that the verdict was inadequate and moved that a new trial be directed on that ground rather than a reinstatement of the verdict. The Appellate Division held that, since no motion had been made at Trial Term for this relief, the question could not be raised for the first time on the appeal.
Defendant, in opposition to the contention advanced by plaintiff on this issue, urges that pursuant to section 584 of the Civil Practice Act this appellate court may reverse or modify the judgment or grant a new trial and, as interpreted by O’Connor v. Papertsian (309 N. Y. 465), may make “ such final determinations of a party’s right as could have been made by the trial court. ’ ’ This, however, can be done only in review of the disposition. of the trial court’s determination and not as a matter for original action. This is brought into clear focus with the realization that in the O’Connor case the Court of Appeals, in an appeal by plaintiff, discussed the power of the Appellate Division to review an order of the Trial Term which set aside a *1092 verdict for inadequacy and affirmed the order unless defendant stipulated to pay a specific sum which was in excess of the verdict. The Court of Appeals noted (pp. 471-472): “ The Appellate Division believed the trial court should have disposed of the action by allowing* the defendant to stipulate to pay a larger sum and, upon that condition, denied the motion for a new trial and therefore the Appellate Division acted in the manner in which the trial court could or, in the opinion of the Appellate Division, should have acted. It matters not that the granting of such conditional order would lie within the discretion of the trial court, for ‘ [m] atters of discretion are reviewable by the Appellate Division. Since that court is a branch of the Supreme Court, whenever discretion is vested in “ the supreme court ” it may be exercised by the Appellate Division by way of a review of the action of Trial or Special Term, even though there has been no abuse of discretion by the lower branch of the court. ’ (9 Carmody-Wait on New York Practice, § 137, p. 573, cases footnoted; Hog an v. Franken, 221 App. Div. 164.) ” It is apparent, therefore, that the O’Connor case does not stand as authority for defendant’s contention that the issue of excessiveness may be raised in an appellate court in the first instance.
Defendant also contends that the motion for the new trial on the ground of excessiveness was encompassed in the motion made upon the return of the verdict to set it aside “ as contrary to the facts and the law in this case.” The motion was purportedly for a new trial on the Judge’s minutes pursuant to section 549 of the Civil Practice Act. That statute affords specific and distinct grounds for the granting of such a motion, viz., exceptions; excessive or insufficient damages; contrary to the evidence or contrary to law. Rule 224 of the Rules of Civil Practice directs that the grounds on which such a motion is made and the grounds on which such a motion is decided must be recited in the order or opinion (Higgins v. Childs, 13 Misc 2d 442). It may not be said, therefore, that a motion was made to set the verdict aside on the ground of excessiveness for consideration by the nisi prius court. It is therefore too late for consideration of this aspect of the verdict at this time.
The judgment should be affirmed, with $25 costs.
Browx and Daly, JJ., concur.
Judgment affirmed, etc.