DAVID BANKS AND A. B. BANKS, *Partners as Banks Brothers,* v. A. S. EVEREST, B. P. WAGGENER AND FRANK EVEREST, *Partners as Everest & Waggener.*

1. PRINCIPAL, *When Bound by Acts of Agent.* A principal is bound for the acts of his agent done within the scope of his authority, and the principal will also be responsible for the unauthorized acts of the agent where the conduct of the principal justifies a party dealing with the agent in believing that such agent was acting within and not in excess of the authority conferred on him.

2. PRIVATE INSTRUCTIONS, *When Inoperative.* Where an agent is held out to the world as one having the authority of a general agent, any private instructions or limitations not communicated to the persons dealing with such agent will not affect them nor relieve the principal from liability where the agent oversteps such limitations.

*Error from Atchison District Court.*

EVEREST & WAGGENER, of Atchison, Kansas, brought an action in the district court of Atchison county, against *Banks Brothers*, to recover damages for the breach of an alleged contract. They allege that in 1883, *Banks Brothers*, through their duly-authorized agent, J. E. Frederick, sold and agreed to deliver the reports of the states of Vermont, New Hampshire, and Colorado, for the sum of $600, the delivery to be made at Atchison, Kansas, free of any charges, and the price of the books to be paid within thirty days from the delivery thereof. They allege that the defendants have failed and refused to comply with the agreement, by which the plaintiffs have been damaged in the sum of $300. The case was tried without a jury, at the June Term, 1884, and the court, at the request of the parties, stated its conclusions of fact and of law, which are as follows:

CONCLUSIONS OF FACT.

"1. The plaintiffs are partners, engaged in the practice of law at Atchison, Kansas, and they have been such partners so engaged for several years last past.

"2. The defendants are partners, engaged in the business of publishing, selling and dealing in law books, at Albany, in the state of New York, and they have been such partners so engaged in said business for several years last past, and they are assisted in their business by traveling salesmen, canvassers, or agents.

"3. On and prior to March 6, 1883, one J. Edward Frederick was a traveling agent in the employ of the defendants, and was duly authorized to represent them. It was intended by the defendants, however, that all sales made by J. Edward Frederick should be subject to the approval of the defendants before they should be binding upon the defendants, and said J. Edward Frederick so understood his authority. The plaintiffs did not know of such limitation of the authority of said J. Edward Frederick. They had frequently bought books from the defendants through such traveling agents or salesmen, after agreeing with such agents or salesmen upon the books and the price, and such books had always been furnished by the defendants at the price agreed upon between the plaintiffs and such traveling agents or salesmen, and the defendants

never notified the plaintiffs, through the agents of the defendants nor otherwise, that the authority of their agents or salesmen was so limited, until after the controversy arose in this case.

"4. On March 6, 1883, said J. Edward Frederick called upon the plaintiffs at their office in Atchison, and asked them if they wanted to buy any law books from the defendants. After considerable negotiation, the plaintiffs agreed to purchase, and said J. Edward Frederick agreed on the part of the defendants to sell a set of New Hampshire reports, a set of Vermont reports, and a set of Colorado reports, for the sum of $600, to be delivered in Atchison in the usual course of business, and to be paid for in thirty days thereafter. Some of the books were to be old and some new, but the old ones that needed rebinding were to be rebound so as to make them in good condition. Said agreement was wholly in parol, and nothing was said about the same being subject to the approval of the defendants, and the plaintiffs understood the agreement to be an absolute contract, and not subject to any condition other than as stated in this conclusion of fact.

"5. Said J. Edward Frederick immediately requested the defendants by letter to send said reports to the plaintiffs at said price, but the defendants refused, and have ever since refused, to forward said reports to the plaintiffs at said price, and they then denied, and have ever since denied, the validity of said agreement, on the ground that it was conditional only, and not complete or binding until after their approval, and that they never approved it.

"6. At the time and place at which such books should have been delivered, under the terms of said agreement, they were worth, in the condition that they should have been delivered, the sum of $870.

"7. Said books have never been forwarded by the defendants to the plaintiffs, although the plaintiffs have ever been ready and willing to pay for the same in accordance with said agreement, and the plaintiffs often demanded performance of said agreement by the defendants before this action was commenced."

CONCLUSIONS OF LAW.

"1. The defendants were and are bound by the agreement made by the plaintiff with said agent of the defendants.

"2. The plaintiffs are entitled to recover from the defendants the sum of $270, and costs of this suit."

44 — 35 KAS.

Judgment was rendered for the plaintiffs, for $270 and costs. The defendants, *Banks Brothers,* bring the case here.

*Porter & Hunter,* and *Jackson & Royse,* for plaintiffs in error.

*Everest & Waggener,* defendants in error, for themselves.

The opinion of the court was delivered by

JOHNSTON, J.: The plaintiffs in error attack the findings of fact and conclusions of law made by the court below, but raise no other questions. The findings of fact are so far supported by the evidence that they must be accepted here as a correct narration of the actual facts in the case. The real inquiry in the case is, whether the conduct of the plaintiffs in error rendered them responsible as principals for the acts of their agent done in excess of the express authority given him.

The rule of law governing this case, as stated by a noted text writer, is that—

"A principal is responsible either when he has given to an agent sufficient authority, or when he justifies a party dealing with his agent in believing that he has given to his agent this authority." (1 Pars. on Con. 44.)

Judge Story, in speaking of the liability of a principal for the unauthorized acts of his agent, where the apparent authority with which the agent is clothed is greater than was intended by the principal, says:

"In such cases good faith requires that the principal should be held bound by the acts of the agent within the scope of his general authority, for he has held him out to the public as competent to do the acts, and to bind him thereby. The maxim of natural justice here applies with its full force, that he who, without intentional fraud, has enabled any person to do an act which must be injurious to himself or another, shall himself suffer the injury, rather than the innocent party who has placed confidence in him." (Story on Agency, § 127, and note.)

The same principle was recognized and applied by this

court in a case where an agreement was made by an agent and commercial traveler, and the principal contended that the agent exceeded his authority in making the agreement. It was said that—

"The defendants had no personal acquaintance, no negotiations, directly with the plaintiff. The entire trade was made between this agent and them. They had no knowledge of the extent or limitations of his authority. If the plaintiff accepted the contract of his agent, he must accept it as a whole, and cannot accept that which suits him and reject the balance. The principal is bound by the representations of his agent — bound by the contracts he makes within the apparent scope of his authority." (*Babcock v. Deford*, 14 Kas. 408.)

Here we find that Frederick was the acknowledged agent of the plaintiffs in error, and "was duly authorized to represent them." He and others of their agents had frequently sold law books to the defendants in error, fixing the terms of sale, and in each case the books had been furnished and forwarded at the price agreed upon between the agent and the defendants in error. It turns out that the extent of the agent's authority was to solicit orders for his principals, which orders were subject to their approval or rejection. But although there had been a long course of dealing between the parties, this limitation had never been disclosed to the defendants in error, nor had it in any way come to their notice. Instead of revealing this limitation through their agents, by circular or otherwise, the plaintiffs in error allowed their agents to go out to the public and act in the character of general agents. When the orders were sent in, they could easily have notified their customers that the orders had been approved or rejected, and thus brought to the attention of their customers the extent of their agent's authority; but this was not done. It also appears in the testimony that the agent from whom the books were purchased, in this case, brought a book to the office of the defendants in error at another time, which he sold and delivered to them, without communicating with or obtaining the approval of his principals. A bill for this book was forwarded by the plaintiffs in error, requesting payment from defendants in error,

which was the same procedure that was pursued in other cases where the books were furnished from the publishing house. Under these circumstances, we think the defendants in error had a right to believe that the agent was acting within and not exceeding the authority conferred on him when the sale in question was made. The defendants in error have dealt in good faith with the agent, upon the strength of his apparent authority, and ought not now to suffer. It is true, that in making the sale he violated the express authority given to him by the plaintiffs in error. But under the familiar principle that has been stated, where one of two innocent persons must suffer by the misconduct of an agent, it should be the one who, by his conduct, has enabled the agent to perpetrate the wrong.

The point urged that the principal cannot be held liable for the unauthorized act of his agent unless the persons dealing with the agent have sustained some loss, cannot apply, as the findings show that the defendants in error suffered a loss of $270, and it was for that loss the present action was brought.

The judgment of the district court will be affirmed.

All the Justices concurring.