## BAKER, *Appellant*, v. THE KANSAS CITY, ST. JOSEPH AND COUNCIL BLUFFS RAILROAD COMPANY.

1. **Agent:** APPARENT AUTHORITY: RAILROAD. Where a railroad holds one out as its freight agent, with general authority in that line of business, it will be bound by the acts of such agent within the scope of his general authority.

2. ———: LIMITATIONS ON APPARENT AUTHORITY. Any limitations imposed by the company upon the apparent authority of the agent would not affect a person dealing with him, unless brought to the knowledge of such person.

3. **Railroad:** CONTRACT FOR SHIPMENT OF STOCK. Where the evidence tended to show that the general freight agent of defendant had authority to make a contract with plaintiff to furnish him a certain number of cars, at certain stations, on a specified day, for shipment of his stock, and that the agent entered into said contract

with plaintiff, and that there was a failure to furnish the cars, to plaintiff's damage, the cause should have been submitted to the jury, and the trial court committed error in refusing to do so.

*Appeal from Holt Circuit Court.*—HON. H. S. KELLEY, Judge.

REVERSED.

*Crosby, Rusk & Craig* and *R. T. Rea* for appellant.

(1) The case should have been given to the jury if there was any evidence (a) of the contract alleged, (b) of its breach, and (c) that the agent had authority to make it, or that plaintiff had reason to believe and did believe that he had such authority. *Brown v. Emerson,* 18 Mo. 103 ; *Owen v. O'Reilly,* 20 Mo. 603 ; 3 Parsons on Contracts [5 Ed.] 117, 118 : 1 Sedgwick on the Meas. of Dam. [7 Ed.] top p. 200, side p. 108. (2) There was evidence, both of the contract and its breach, as alleged in the petition. (3) There was, also, not only evidence that the plaintiff had good reason to believe, and did believe, that the agent had authority to make such contract, but that the agent had such authority. (4) The company was bound by the apparent authority of its agent. *Harrison v. Railroad,* 74 Mo. 364 ; *Prewitt v. Railroad,* 62 Mo. 540 ; *Scalarris v. Railroad,* 18 Nev. 155 ; *Grafius v. Land Company,* 3 Phila. 447. (5) The authority of an agent is to be determined by the nature of his business, and on the face of the matter is co-extensive with its requirements. *Gentry v. Insurance Co.,* 15 Mo. App. 215. (6) There being no written contract or appointment in evidence by which the extent of Smith's authority could be determined, it was a question to be left to the jury under all the evidence, together with the question of plaintiff's notice of that authority, unless defendant's evidence admitted that Smith had authority to make the contract in proof. *Barrett v. Railroad,* 9 Mo. App. 226 ; *Gelvin v. Railroad,* 21 Mo. App. 273.

*Huston & Parrish* for respondent.

The court properly sustained the demurrer to the evidence in this case. (*a*) The evidence did not prove the contract or tend to do so. There can be no valid contract unless the parties thereto assent, and they must assent thereto at the same time, and in the same sense ; their minds must meet and agree on the same thing. *Eads v. City of Carondelet*, 42 Mo. 113–17 ; *Brown v. Price*, 29 Mo. 323 ; *Lungstras v. German Insurance Co.*, 48 Mo. 201–4 ; *Donlanson v. Studebaker*, 52 Ind. 286–93 ; *Polkin v. McIntyre*, 81 Mo. 557–60 ; *Ferguson v. Hemmingway*, 38 Mich. 159–61 ; *Booth v. Brice*, 38 N. Y. 463 ; *Suit v. Taylor*, 20 Mo. App. 166–73–75 ; *Aull Savings Bank v. Aull's Adm'r*, 80 Mo. 199–202 ; 1 Cush. 89. (*b*) There is nothing in the evidence tending to prove that Smith had the authority to make the contract. The appellant claims that the authority may be implied from his title, "General Freight Agent," and that whatever contract he might make would bind the company, whether it came within the scope of his authority or not. The court cannot take judicial notice of the duties of defendant's general freight agent. *McGown v. Railroad*, 61 Mo. 528 ; *Brown v. Railroad*, 67 Mo. 122. The suit is brought alone on a special contract, and not on the violation imposed on the defendant by law, as a common carrier. The law of common carriers, therefore, is not applicable. The case is to be tested by the law of contracts and agencies, applicable to all alike. *Collier v. Sweeny*, 16 Mo. 484. "An agent having a general power to settle claims has no power to arbitrate claims." *Railroad v. Conyer*, 55 Ill. 503 ; *Chouteau v. Anthony*, 11 Mo. 226 ; *Summerville v. Railroad*, 42 Mo. 391. "The general duties of a cashier of a bank are to collect notes, and in the absence of special authority he has no power to discharge surety." *Davis*

*County Bank v. Sailer*, 63 Mo. 24; *National Bank of Trenton v. Gay*, 63 Mo. 33; *Taylor v. Robinson*, 14 Cal. 396; *Mathews v. Hamilton*, 23 Ill. 407; *Buckwalter v. Craig*, 55 Mo. 71; *Tucker v. Railroad*, 54 Mo. 177.

BRACE, J.—This action was brought to recover damages for the failure of defendant to furnish a certain number of cars at certain stations on a specified day. The petition alleges, "that, at the times hereinafter mentioned, the defendant was, and it still is, a corporation, organized and existing under and by virtue of the laws of the state of Missouri, and engaged in the business of transporting goods and chattels, as a common carrier, for hire; that, on or about the twenty-seventh day of May, 1881, in consideration of the promise then and there made by plaintiff that he would drive to defendant's stations in the towns of Mound City and Maitland, Missouri, and have there, on the thirty-first day of May, 1881, ready for shipment and to be shipped over defendant's railroad, to Chicago, Illinois, cattle and hogs sufficient to fill twenty-three cars, the defendant undertook and agreed to provide, furnish, and have at its said stations of Mound City and Maitland, on the thirtieth day of May, 1881, twenty-three cars in readiness to receive and transport plaintiff's said cattle and hogs as aforesaid; that plaintiff, relying on said undertaking and agreement, drove his said cattle and hogs to said stations, and, on said thirty-first day of May, 1881, had, at said stations ready for shipment and to be shipped over defendant's said railroad to Chicago, Illinois, cattle and hogs sufficient to fill twenty-three cars. Plaintiff further states that the defendant, disregarding its said undertaking and agreement, failed to provide, furnish, or have in readiness, at its said stations, or either of them, on said thirtieth day of May, 1881, any cars in which to receive and transport plaintiff's cattle as aforesaid, and did not furnish or provide such cars

until the third day of June, 1881, by reason of which said failure of defendant to provide said cars at the time and places agreed upon as aforesaid, plaintiff's said cattle were detained at said stations, and were not, and could not, be shipped therefrom, on their way to Chicago, until the fourth day of June, 1881, to plaintiff's damage in the sum of three thousand dollars;" and then specifies the particulars of the losses and damages by reason of defendant's failure.

Defendant's answer was, in effect, a denial that defendant ever entered into the contract set out in the petition. After the testimony was all in, the court instructed the jury to find for the defendant; thereupon plaintiff took a non-suit, with leave; and afterwards moved to set the same aside, which motion being overruled, he brings the case here by appeal, and assigns for error the action of the court in instructing the jury to find for the defendant.

The only question presented for our consideration on the record is, was there evidence introduced upon the trial tending to prove that defendant entered into the contract with the plaintiff, set out in the petition? It is claimed by the plaintiff that the contract was made with James E. Smith, the defendant's general freight agent, and unless there was evidence tending to prove that such contract was made with said general freight agent, and that he had authority to make the contract, there was no error committed by the trial court.

The evidence of plaintiff is relied upon to show that the contract was made; he states, substantially, as follows, in chief : "On May 27, I came from home up to Holt county, and stopped in St. Joe. I met Mr. Smith; Mr. Smith was general freight agent of the Kansas City & Council Bluffs Railroad; I told him I wanted twenty-three cars on the thirtieth—eight at Mound City, and fifteen at Maitland, for Chicago. I

asked him if he could get the cars, and he said he could, and called a clerk to take down the order, and asked me would I have the cattle there; I said I would, and wanted the cars on Monday so that I could bed them.   I told him I wanted the cars; he asked me if I could have the cattle there; I said I would; he then said I could have the cars, and called the clerk to take the order, and then told me to see the agents at Mound City and Maitland; I went to Mound City and Maitland and spoke to them as Smith had requested me to do.   I made the arrangements with Mr. Smith; I did not see any other party;" and on cross-examination: "I told him, Smith, I wanted twenty-three cars at Mound City and Maitland—eight at Mound City, and fifteen at Maitland; asked if I could have the cars; he said I could, and asked me if I would bring the cattle in; I said I would, and he called the clerk and gave him the order. I told him I wanted the cars May 30, and that if I had the assurance of cars, the stock would be there; he then said he would have the cars there.   I am sure he made that expression.   He then called the clerk to take down the number of cars; I suppose the clerk did take it down; saw him write at Smith's dictation.   Nothing further occurred at the time."

We think this evidence tends to prove the contract between plaintiff and Smith.   It shows a concurrence of the minds of both parties, at the same time, in a mutual undertaking having the same object in view, i. e., the shipment of plaintiff's cattle to Chicago in defendant's cars, and, interpreted in the light of common sense and ordinary good faith, mutual and reciprocal promises from each to the other—the promise of Smith being to furnish the cars at the stations named at the time stated, and the promise of plaintiff being to have his cattle at the stations named at the time stated—the promise of each being a good consideration for the promise of the other, and upon which each had a right to rely and act.

The enquiry remains, did the evidence tend to show that Smith had authority to make the contract? It appears, unequivocably, from the evidence, that during the months of May and June, 1881, Smith was, and for a year and more prior to that date had been, defendant's general freight agent; that his office as such was at St. Joseph; that the city of Chicago is beyond the terminus of defendant's line of railroad; that its freight was carried to that city from Burlington Junction, Missouri, by the Chicago, Burlington & Quincy Railroad, by virtue of a traffic arrangement existing between these companies; that Maitland and Mound City are stations on defendant's railroad, at some distance from St. Joseph, and from each other; that defendant had station agents at each of said stations, and tended to prove that the contract was made between plaintiff and Smith, at the office of the general freight agent at St. Joseph; that, on a previous occasion, plaintiff's cattle had been shipped from Kansas City over defendant's road upon a contract made with Smith; and, on a previous occasion, plaintiff had applied by mail for cars to the office of the general freight agent. The foregoing is all the evidence relied upon in this case to show that Smith had authority to make the contract sued on. It may be conceded that there is nothing in the evidence tending to show that authority to make the contract sued on had been expressly conferred upon the agent, Smith; or that, according to the general usage and custom of defendant's railroad, the making of such contract was within the apparent scope of his usual and ordinary duties, and if he had such authority it is because the defendant held him out, or permitted Smith to hold himself out, to plaintiff and the world, as having such power. The contract itself shows that Smith held himself out to plaintiff as having the power to make the contract, and also that plaintiff believed that Smith did have such power.

Was he justified in entertaining that belief, and acting upon it by reason of the apparent authority with which the defendant had clothed him? At the time this contract was made, the defendant was holding Smith out to the plaintiff and the world as its general freight agent, as it had been doing for more than a year immediately preceding that date; it had conferred upon him the title and placed him in that position in that department of its business devoted to the transportation of freight from one place to another for hire, and in that particular line of its business, it held Smith out to the plaintiff and the world as its general agent, as one authorized to transact all defendant's business in that particular line or department. In that line of defendant's business, Smith was held out, not merely as having authority, but as having general authority, "and in such cases, good faith requires that the principal should be held bound by the acts of the agent within the scope of his general authority." Story on Agency, sec. 127. When the principal puts the agent forward as a general agent, or places him in a position where others are justified in the belief that his powers are general, the restrictions that may be imposed privately on the agent will be immaterial, except as between him and the principal, and can have no effect on the rights or remedies of third persons who have no knowledge of the restrictions or limitations upon his apparent authority. *Grafius v. Land Co.*, 3 Phil. 447. And there is no reason, and can be no legal principle, that will put the agent of a corporation on any different footing than the agent of an individual in regard to the same business. *Adam's Mining Co. v. Senter*, 26 Mich. 73.

Henry, J., in *Grover & Baker Sewing Machine Co. v. Railroad*, 70 Mo. 672, in distinguishing the powers of a special, from those of a general, freight agent, approved the doctrine laid down by Sutherland, J., in *Burtis v. Railroad*, 24 N. Y. 274, "that if defendant had the

power to make or authorize the making of such a contract, then the person acting as the general freight agent should be deemed to have been clothed with all the power to make contracts for freight, or in respect to the carrying and delivery of freight that the principal had." There is no question as to the power of the defendant to make the contract in this case, and it was a contract for freight, a contract having for its object the shipment of plaintiff's stock over defendant's road for him, on a certain day, from two of its stations to Chicago. The leaving the cars and cattle at those stations on that day was not the end and object of the contract, but means by which that object was to be accomplished. A grant of general authority includes within it all the necessary and usual means of executing it with effect, and all the mediate powers necessary to .the end, an incident to the primary power, although not expressly given. Story on Agency, sec. 58.

From the foregoing it appears that the defendant, having put Smith before the world as its general freight agent, clothed him with the apparent power to make all necessary contracts in the line of business committed to his general control. A necessity of that line of business being that shippers shall have furnished them, at particular stations, at certain dates, cars for the shipment of their freight. *Pruit v. Railroad*, 62 Mo. 528. He was clothed with apparent authority to make the contract sued on, and when plaintiff, having freight which he desired to ship on defendant's road from two of its stations, on the same day, to a point beyond the terminus of defendant's line of road, needed cars for its transportation at such stations on that day, he had a right to assume that such general freight agent had authority to make the contract. On a former occasion, when plaintiff desired to ship this same stock on defendant's road, on application to Smith, it was shipped; the evidence fails to show that any other officer or agent was held out

as authorized to make the contract. Plaintiff had no right to assume that either of defendant's station agents could make a contract for cars at the station of the other, or that either or both of them had such authority as would enable them to have the cars at both stations at the same time ; so that, on the face of the transaction, Smith not only had apparent authority to make the contract, but there was no ground for an assumption on the part of plaintiff that any other officer or agent of defendant had that authority.

It follows, that if the defendant had imposed any limitations upon this apparent authority of its general freight agent, such limitations could not affect the plaintiff, unless brought to his knowledge, and this was a question of fact to be submitted to the jury, and the evidence in the case, tending to show that Smith, the general freight agent, had authority to make the contract, and that he did enter into such contract with plaintiff, and the failure of defendant to furnish the cars for the shipment of plaintiff's stock, to his damage, having been satisfactorily shown, we think the court committed error in taking the case from the jury ; for which cause the judgment is reversed and the case remanded for new trial.