## OSAGE COAL & MINING CO. v. MIOZRANY.

### No. 5238.  Opinion Filed September 22, 1914.

#### (143 Pac. 185.)

**MASTER AND SERVANT**—Injuries to Servant—Negligence of Master—Question for Jury. While the employee of a coal company was at work pulling empties at the bottom of one compartment of the shaft, he was struck on the head and killed by a lump of coal which fell down the shaft after being knocked from the bunting of the tipple by an ascending cage in a corresponding compartment of the shaft. **Held**, as the evidence tends to prove that the car leaving the lump on the bunting was overloaded, the question of defendant's negligence was one for the jury. **Held**, further, as the evidence reasonably tends to prove that defendant had failed to furnish a properly constructed bonnet or other appliance for the protection of deceased from falling coal, that whether defendant had been negligent in failing to exercise reasonable care in furnishing deceased a reasonably safe place to work was a question for the jury.

(Syllabus by the Court.)

*Error from Superior Court, Oklahoma County;*
*Edward D. Oldfield, Judge.*

Action by Mary Miozrany against the Osage Coal & Mining Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Gordon & McInnis,* for plaintiff in error.

*H. H. Smith,* for defendant in error.

TURNER, J. On August 15, 1911, Mary Miozrany, defendant in error, in the superior court of Oklahoma county, sued the Osage Coal & Mining Company in damages resulting in the

death of Jacob, her husband.  On March 5, 1912, defendant an-
swered, in effect a general denial, a plea to the jurisdiction, con-
tributory negligence, and assumption of risk.  After reply, in ef-
fect a general denial of the facts set forth in the defenses pleaded,
there was trial to a jury and judgment for plaintiff for $10,000,
and defendant brings the case here.

After stating the residence of plaintiff, that she was the
wife of deceased, the corporate existence of defendant, that at
the time of the injury complained of its business was mining coal
in Pittsburg county, that Helena was a minor and their only
child, that no administrator had been appointed on deceased's
estate, and that no other action had been brought to recover on
account of said injury for the benefit of the next of kin of said
Jacob, the petition substantially states that on July 18, 1911, while
he was employed in defendant's mine No. 8 near Krebs in said
county, and engaged in drawing an empty car from the cage
at the bottom of one compartment of the shaft, he was struck on
the head and killed by a piece of coal, dropped from a loaded
car, which fell down the shaft after being knocked from the
bunting of the tipple by the cage hoisting a car of coal from
the bottom to the top of the mine in the corresponding compart-
ment of the shaft; that prior thereto, to the knowledge of de-
fendant but unknown to deceased, coal frequently fell in like
manner down said shaft, owing to the negligence of defendant
in failing to properly operate and inspect its machinery, and in
failing to properly load and inspect the loaded cars, and in fail-
ing to furnish proper appliances in the way of properly con-
structed railings, bonnets, doors, etc., to prevent coal from so
falling while being hoisted as alleged; by reason of all of which
she says defendant failed to furnish deceased a reasonably safe
place to work, to her damage in a sum certain.

It is assigned that the evidence was insufficient to take the
question of negligence to the jury, and hence the court erred
in refusing to give a peremptory instruction to the jury to re-
turn a verdict in favor of defendant.  There is practically no
controversy as to the facts.  The evidence discloses that, at the
time he was killed, deceased was employed by defendant to work

in its coal mine No. 8, near Krebs. From the accurate statement of facts in plaintiff in error's brief, it appears that this is a shaft mine; that is, a perpendicular shaft driven from the top of the ground to the strata of coal to a depth of some 285 feet. The shaft is of wood, and is about six and one-half feet across from east to west, and is divided into two compartments, each about five feet eight or ten inches from north to south; that on top of the ground the shaft is extended upward to the tipple some 30 or 35 feet; that the shaft is divided into compartments by buntings consisting of a partition set across the middle of the shaft horizontally from east to west, made of timbers 6x6 inches placed three and one-half or four feet apart; that in each of these compartments runs a cage, which cages operate side by side and alternate up and down on a track, which is fastened to the buntings on each side of the cage, so that when one cage strikes the tipple at the top, with its load of coal to dump, the other strikes the bottom of the shaft empty; that both are hoisted and lowered by a cable attached to each, which passes over a drum rotated by steam power; that at the bottom of the shaft, under each compartment, is a pit or sump into which the empty cage lands flush with tracks which lead out into the mine. These cages were alike and consist of a small car on a platform, over which is a top or "bonnet," which is slightly sloped like a roof, and is built of timbers which approach the edge of the compartment to within three inches on the east and west and to within nine inches on the north and south. When the empty cage sinks to rest in the sump, there is an open space of nineteen inches from the top of the cage to the edge of the roof of the entry. The evidence further discloses that, at the time of the injury complained of, these cages were carrying loaded cars of coal to the top at the rate of three a minute; that, when an empty came down and sank into the sump, it was the duty of deceased and another to pull the car from the cage onto the track in the entry and for others, at the same time, to replace it with a loaded car from a track on the opposite side of the cage. Plaintiff tried the case upon the theory that, while deceased was so doing, a lump of coal, which came from an over-

loaded car, fell down the shaft, as the other cage was going up, and struck and killed deceased, and that the bonnet, designed for that purpose, was not adequate to protect him from falling coal. As there is testimony in effect that a lump of coal as large as a 24-pound sack of flour was seen lying on the bunting up near the tipple, that it was knocked off by the ascending cage, that, while deceased was discharging the duties aforesaid, a noise was heard up the shaft as of a falling lump of coal, that it struck and shattered, that fragments were picked up around deceased, who was seen at the time to fall with a gash in his head, we think it was properly conceded that the evidence establishes the fact that deceased was killed by a lump of falling coal. For the reason that negligence in overloading might reasonably be inferred from the fact that the lump fell down the shaft, it was not error for the court to submit that question to the jury.

In *Union Pac. Ry. Co. v. Erickson,* 41 Neb. 1, 59 N. W. 347, 29 L. R. A. 140, the facts were that plaintiff was a section hand on defendant's road; that, while he was engaged in repairing the track, he stepped back to permit a passenger train to pass. As the train passed, a large lump of coal fell from the tender and struck and injured him. The evidence disclosed that it required the full capacity of the tender to store enough coal to supply the engine during its run; that the same was loaded to its full capacity at the chute without any precaution as to the safe disposition of the coal; and that it was the fireman's duty to place in safety any coal found in a dangerous position on the tender. It was held that these facts were sufficient to take the case to the jury on the question of whether the company had been negligent in loading the coal. In passing on the precise point here involved, the court said:

"The principle contention on the part of the railroad company is that negligence in loading the coal could not be inferred from the fact that the lump fell from the tender. There is no doubt of the general principle that negligence cannot be inferred merely from the fact that an accident happened, and it is also true that, while negligence is an inference to be drawn from the facts proved, facts warranting that inference must be proved, and the jury cannot be left to conjecture the ex-

istence of facts which might ground the inference of negligence. But facts may be established by circumstances as well as by direct testimony, and the same facts which prove the accident may, in some cases, be circumstances which establish the facts justifying an inference of negligence. So in this case. Neither fireman nor engineer saw the coal fall. It was certainly not dislodged from a place of safety by any act of theirs at the time. Erickson and the section boss did see it fall as the train passed. It is not merely a conjecture, it is a plain inference, from the fact that it fell under the circumstances, that it had been so placed upon the tender that it was in a position from which it was liable to be dislodged by the motion of the train. All the evidence shows that it was necessary to heap the coal upon the tender in order to enable it to carry sufficient to make the run. The fireman's evidence shows that no precautions were taken in loading to load it safely, and that he was charged with the duty to inspect the loading and change the position of the pieces where they were unsafe. The method of loading accounts for the lumps being in a position of unstable equilibrium, and, unless we disregard the law of physics, we must say that it had been left in such a position or it would not have fallen."

As in that case, so here there is some evidence on the question of loading, in effect that there was not only no uniformity in the size of the loads, but that, so far as the evidence discloses, it was the duty of no one to see that the cars were properly loaded. But, let that be as it may, it is evident that so large a lump of coal as the one causing the injury could not have fallen from the car and found lodgment on the bunting from whence it was knocked, unless the car leaving it there had been overloaded. In other words, it would seem true beyond question that a car, undisturbed by lateral motion as this was, could not lose a part of its load by mere gravity unless overloaded.

In *Croll v. Railroad Co.*, 57 Kan. 548, 46 Pac. 972, plaintiff, an employee, was standing ten feet from a railroad track, ditching, when he was struck by a piece of coal from the tender of a passing engine. Some of the witnesses stated that it was loaded in the usual way, and, while the fireman stated that it was rounded up about a foot or a foot and a half in the middle of the tender, there was testimony in effect that it was rounded up from two to three feet high above the tender. Held, that

the testimony tended to show that the tender was overloaded, and that the injury was due to the negligence of defendant.

In fact, some of the cases hold that the doctrine of *res ipsa loquitur* applies in this and kindred cases. In *Gulf, C. & S. Ry. Co. v. Wood* (Tex. Civ. App.) 63 S. W. 164, in the syllabus it is said:

"Proof that a piece of coal flew from the tender of a passenger train, and injured a section hand, who was standing at a reasonable distance from the track, in absence of explanation, under the doctrine of *res ipsa loquitur,* constitutes sufficient evidence of negligence on the part of the company to establish a *prima facie* case, notwithstanding the coal was properly loaded on the tender."

And in the opinion:

"There are instances in which the circumstances surrounding an occurrence and giving a character to it are held, if unexplained, to indicate the antecedent or coincident existence of negligence as the efficient cause of the injury complained of. These are the instances where the doctrine of *res ipsa loquitur* is applied. This phrase, which, literally translated, means 'the thing speaks for itself,' is merely a short way of saying that the circumstances attendant upon an accident are themselves of such a character as to justify a jury in inferring negligence as the cause of that accident. There must be reasonable evidence of negligence. But when the thing is shown to be under the management of the defendant or its servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of an explanation by defendant, that the accident arose from want of care."

*Louisville & N. R. Co. v. Clark* (Ky.) 106 S. W. 1184, was a suit in damages for injuries received by plaintiff while employed as flagman or rear brakeman on a freight train on defendant's road. The injury was alleged to have been caused by a lump of coal falling from defendant's engine tender, which was alleged to have been improperly loaded, and striking him on the head. The only question submitted to the jury was whether defendant's agents, whose duty it was to load defendant's tender, overloaded or loaded it in such a manner that the coal was likely to and did fall therefrom. The injury occurred while

plaintiff was near the engine while it was doing some switching. He did not see the coal when it hit him, but upon regaining consciousness saw small pieces of coal around him. It was contended that the evidence was insufficient to take the case to the jury on the question of negligence. But the court held not so, and said:

"It is certain from the testimony that some heavy substance fell upon his head; that a fresh lump of coal was found at the place where he received his injury immediately after he was hurt; and that the tender was filled with coal. These circumstances presented facts which were properly submitted to the jury for its consideration. The proof shows that it was no part of the duty of appellee to load this tender with coal, or inspect it or see whether or not it was overloaded. This duty devolved upon the company, or some one representing it. It was the duty of the company to see that the coal was properly loaded and to make it reasonably safe for those whose duty it was to work around and about it. Appellee had the right to presume that it was properly loaded and safe."

See, also, *Fitzgerald v. Southern Ry. Co.,* 141 N. C. 530, 54 S. E. 391, 6 L. R. A. (N. S.) 337; *Dean v. Kansas City & C. R. Co.,* 199 Mo. 386, 97 S. W. 910. But *Schultz v. Chicago & N. W. R. Co.,* 67 Wis. 616, 31 N. W. 321, 58 Am. Rep. 881, seems to hold that the doctrine of *res ipsa loquitur* does not apply, but, contrary to defendant's contention, supports the contention that the facts were sufficient to send this case to the jury on the question of negligence. In that case plaintiff was a track walker, and, while walking the track, was passed by a train. When the tender was passing, he saw a dark object fall, or thrown, from it, which struck him and injured him. He saw near him a piece of coal about the size of a man's soft hat, and it appeared that that was what hit him, and that it probably fell from the tender. Concerning this case, the court in *Union Pacific R. Co. v. Erickson,* 41 Neb. 10, 59 N. W. 348, 29 L. R. A. 140, said:

"In this connection we are cited to the case of *Schultz v. Chicago & N. W. R. Co.,* 67 Wis. 616 [31 N. W. 321] 58 Am. Rep. 881, a case arising out of a similar accident. Portions of that decision are open to criticism, but, upon the ques-

tion of negligence, we do not think that the conclusion was wrong, or even that it conflicted with that we reach. All that the court there held was that the facts established did not make out a case of negligence in law. The court did not say that a jury would not be justified in finding negligence from such facts. We would say the same—that the court should not, under such facts, instruct the jury either that there was or was not negligence. This was an inference for the jury to draw."

And so, as we are not called on to say whether the doctrine of *res ipsa loquitur* applies from the fact of the falling of the coal in the instant case, we will only say that the evidence was sufficient to take the question of negligence to the jury.

Neither did the court err in submitting to the jury the question of defendant's negligence upon the theory that defendant had failed to furnish a properly constructed bonnet or other appliance for the protection of deceased from falling coal. This for the reason that the petition not only tenders that issue, but the answer joins issue, thus:

"That the same (meaning the cages, of which the bonnet is a part) were of simple construction, plain to be seen, which this defendant does not specially deny, and if the injury and the death of the said intestate was caused by any danger arising from the alleged faulty construction of said cars and cages, or either, which this defendant does specially deny, the said intestate accepted his employment to work at, with, and about the said cages and cars, having such knowledge, or having the opportunity, by the exercise of reasonable care for his own safety, to acquire such knowledge, and with full understanding and appreciation of such dangers, and continued in such employment without complaint, and thereby assumed the risk of any injury which resulted to him from such defective construction. * * *"

And for the further reason that the evidence reasonably tends to prove that, although there was a space of nineteen inches between the edge of the bonnet and the roof of the entry through which this lump of coal, after shattering, fell, and through which other lumps of coal had, unknown to deceased, theretofore fallen, and which could have been closed by the use of a simple appliance described by the superintendent of the mine, and that no such precaution was taken by defendant to make deceased's post

of duty a reasonably safe place to work, the court did not err in sending to the jury this question of the negligence of the master. On this point, *Ford, Administratrix, etc., v. Lyons,* 41 Hun (N. Y.) 512, is instructive. That was a suit in damages for personal injuries sustained by plaintiff's intestate. The evidence disclosed that he was injured by some substance falling on his head while he was at work in the cellar of a building in course of erection in the city of New York; that he was preparing mortar to be used by defendant's bricklayers, who were at work on a scaffold in the fourth story laying brick, and in so doing he was required to go to a tub of water in that part of the cellar under the space left for the construction of the stairways, and that deceased was near the tub when struck. It was proved that broken pieces of brick did fall from the upper part of the building, where the bricklayers were at work, and the court stated the probability to be that he was struck by a hard substance falling from above, which fractured his skull. There was evidence tending to prove that, although there was a covering placed in that part of the building to protect from such an injury, witnesses were unable to state whether open spaces existed in this covering, but did not think that they were large enough for a brick or stone of the size mentioned to pass through. In determining the question of whether the evidence was sufficient to sustain a verdict of the jury finding that the covering was defective, and that by reason of this fact the injury was received, the court said:

"As the case was made to appear, there was no other probable cause from which he could have been injured in the manner in which he was than by the falling of some hard substance upon his head from the upper portion of the building, and that could only have fallen upon him through an opening in the covering over the space where he was at work. The jury did therefore have evidence before them sustaining the probability of the statements made by the witness Hughes that the covering was defectively insufficient, and that this man received a mortal injury by reason of that fact. It was for the jury, under the evidence given, to determine whether this was so or not, and their verdict, finding the existence of that fact, cannot be held to have been so conspicuously against the weight of the evidence as to either justify or require the court to set it aside."

These issues being fairly stated in the following instruction, it was not error to give it, as assigned:

"If you find from the evidence in this case that the deceased, Jacob Miozrany, received injuries as alleged in the petition of plaintiff, and that defendant was negligent and careless in properly safeguarding the deceased while engaged in his employment below, in so constructing the covering of said car of coal of said cage, or its servants were guilty of negligence and carelessness in causing coal to fall from the bunting of the tipple on top of the ground where said coal was dumped, or failing to exercise ordinary precaution in preventing the same from falling, or failing to use some device, which in the exercise of ordinary care it should have done, which would prevent the coal from falling upon the deceased, and if you so find that from either one or all of these particulars, as the proximate cause thereof, the deceased received injuries, and thereby lost his life, then it will be your duty to find for plaintiff."

Nor was there reversible error in giving the following:

"Under the laws of the state, Jacob Miozrany is the servant and defendant is the master, and the deceased, Jacob Miozrany, did not assume the risk of the negligence, if any, of one of his coservants working there with him below, or above the shaft of said mine, and if you find that he came to his death on account of the negligence of any one of his coservants, in the employ of the defendant, then the negligence of such servant, if any, would be the negligence of the master."

This for the reason that, if it is the law as contended in support of the error assigned in giving said instruction:

"The servant assumes every risk, whether the same be or be not the result of the master's negligence, provided, in cases of negligence, the servant knew the danger, or by ordinary observation should have known it, provided it is obvious and imminent, provided he appreciates it, and provided there is no assurance of safety or promise of remedy,"

—defendant got the full benefit of it when the court gave, at his request, this instruction:

"You are further instructed that the Osage Coal & Mining Company was not an insurer of the safety of the deceased, Miozrany. The deceased, by his contract of employment, assumed all of the ordinary risks and hazards incident to his employment, whether the same existed at the time he entered

the service of the defendant, or arose after the beginning of his work in the employment of the defendant, and, in addition to the ordinary risks and hazards so assumed, he assumed all of the extraordinary risks and hazards of his employment, wherever arising, which were open, obvious, and apparent, if he knew such risks and hazards, or had the opportunity, by the exercise of reasonable care, to know them, and if the danger arising therefrom was imminent and was appreciated by him, and if he continued at his work in the presence of such extraordinary risks and hazards without complaint and without promise of remedy. This is true regardless of whether or not the hazards so assumed, if any, resulted from the negligence of the defendant or not, and in this case, if you find that the sole cause of the death of Jacob Miozrany was one or more of the risks or hazards, if any, so assumed by the deceased, then you will render your verdict in favor of the defendant and against the plaintiff."

There is no merit in the remaining assignments of error. Affirmed.

All the Justices concur.