## NATIONAL SURETY CO. v. MIOZRANY *et al.*

No. 7566.   Opinion Filed March 21, 1916.

(156 Pac. 651.)

1.    **PRINCIPAL AND AGENT—General Agent—Apparent Authority.**
A principal is bound by the apparent, as well as by actual or express, authority given its general agent, where third persons have in good faith acted and relied thereon.

2.    **SAME—Violation of Instructions—Liability of Principal.** When an agent is held out to the world as one having the authority of a general agent, any private instructions or limitations upon his authority in a particular case, not communicated or known to those dealing with such agent, will not relieve the principal from liability incurred, where the agent oversteps such limitations.

3.    **APPEAL AND ERROR—Supersedeas Bond—Release of Surety—Validity of Order.** The surety on a supersedeas bond, made in compliance with the provisions of section 5253, Rev. Laws 1910, is bound by the terms of its obligation  Where such bond has been duly executed, filed, and approved, and execution on the judgment stayed thereby, the judge of the trial court in which the judgment is pending cannot, without notice to or the consent

of the obligee of the bond, and without form of trial, by summary order granting the judgment defendant time in which to make a substituted bond, and which order is made on the application of the surety, release such surety of its undertaking, though the second bond be made and approved. Any such order so made is void, and may be set aside and vacated at any time on motion of any person affected thereby.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*
*Tom D. McKeown, Assigned Judge.*

Action by Mary Miozrany against the National Surety Company and others. Judgment for plaintiff against the National Surety Company, and the company brings error. Affirmed.

*Maxey & Brown* and *Keaton, Wells & Johnston,* for plaintiff in error.

*L. D. Threlkeld* and *H. H. Smith,* for defendant in error.

SHARP, J. On December 24, 1912, judgment was rendered in the superior court of Oklahoma County in favor of Mary Miozrany against the Osage Coal & Mining Company, for $10,000 damages and costs, on account of the negligent killing of Jacob Miozrany, husband of the said Mary Miozrany. On the 25th day of January, 1913, said mining company, as principal, and William Busby and the National Surety Company, as sureties, made and executed a supersedeas bond in said action in favor of the plaintiff therein, which said bond was approved by the trial judge and clerk of the superior court, and filed in said court on January 28th following. By the terms of said bond the sureties acknowledged and declared themselves, and each of them, jointly and severally bound and indebted unto plaintiff in the sum of $20,500,

for the payment of which they, and each of them, were firmly bound; conditioned, however, that if the said mining company should pay the condemnation money and costs in case said judgment or final order should be affirmed in whole or in part, then and in that event said bond and obligation should be and become null and void; otherwise to remain and be in full force and effect. The bond was executed by the National Surety Company by H. S. Shelor, attorney in fact. On appeal to this court the judgment of the trial court was affirmed, September 22, 1914. *Osage Coal & Mining Co. v. Miozrany*, 43 Okla. 453, 143 Pac. 185. Mandate thereafter issued and was filed, and spread of record in the trial court. Thereupon execution issued, and was returned "No property found." The present action was brought by Mary Miozrany, obligee in said supersedeas bond, against said surety company and the executor of the estate of William Busby, deceased, on said original bond, and against D. M. Hailey, J. H. Bollinger, and Elmer C. Million, executor of the estate of William Busby, deceased, on a second supersedeas bond given in said original action, executed by said Hailey, Bollinger and Busby, February 19, 1913. The surety company defended, denying, in substance, its execution of the original bond, and charging that an order of court made February 15, 1913, giving defendant ten days therefrom in which to file substituted bond in lieu of the bond of January 25, 1913, purporting to have been executed by it, and the due execution and approval of said substituted bond, operated to release said surety company from all liability, if any it had incurred, upon the bond in which it appears as a surety. The trial court found that the surety company executed the bond in question, and rendered judgment for the plaintiff.

The authority of H. S. Shelor to execute the supersedeas bond, we do not understand to longer be in issue, as it is said in the brief of counsel for plaintiff in error:

"It is, we think, sufficient to say that his (Shelor's) testimony on this point shows that he was a general agent of the National Surety Company, with such authority that any bond executed by him would be binding upon the company in favor of a third person relying upon his apparent authority, but that in the execution of this particular bond Mr. Shelor misconstrued the directions which had been given him by the company, and executed the bond when the company did not intend that he should, and had not, in fact, authorized it. In other words, the execution of the bond sued upon, in this case, was never authorized by the National Surety Company; but Shelor's apparent authority was such that a third person was justified in relying upon the execution of the bond by him."

And again:

"The bond was executed by Shelor on account of his misconstruing a telegram sent him with reference to it."

Further, it is said by counsel, in stating the issues:

"A supersedeas bond was executed by the general agent of a surety company, within the scope of his apparent authority, but upon a misconstruction of the authority actually given him."

In legal significance, an agent's authority is the sum total of the powers which his principal has caused him or permitted him to seem to possess. It is not limited to the powers actually conferred, and to those to be implied as flowing therefrom, but includes, as well, the apparent powers which the principal by reason of his

acts or conduct is estopped to deny. *Howe v. Martin,* 23 Okla. 561, 102 Pac. 128, 138 Am. St. Rep. 840; *Wheeler v. McGuire et al.,* 86 Ala. 398, 5 South. 190, 2 L. R. A. 808; *Louisville & N. R. Co. v. Tift,* 100 Ga. 86, 27 S. E. 765; *Baker v. Kansas City, S. J. & C. B. R. Co.,* 91 Mo. 152, 3 S. W. 486; *Aldrich v. Wilmarth,* 3 S. D. 523, 54 N. W. 811; *McAlpin v. Cassidy,* 17 Tex. 449; *Griggs v. Selden,* 58 Vt. 561, 5 Atl. 504. The instructions of the agent include, not only terms of the power which are intended to be made known to those who deal with the agent, and the deviations from which will render ineffectual his act, but also private instructions or directions to the agent as to the manner in which he shall execute his commission, but which from their nature, or the desire of the principal, it is manifest that it is not expected the agent shall disclose to persons with whom he deals. Between these there is a material distinction. The former are part of the agent's authority; the latter, however they may affect the agent, can have no effect to qualify the liability of the principal to third persons to whom they are not, and are not intended to be, communicated. While, as between the principal and the agent, the scope of the latter's authority is that authority which is actually conferred upon him by his principal, which may be limited by secret instructions and restrictions, such instructions and restrictions do not affect third persons ignorant thereof; and, as between the principal and third persons, the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, and which the principal is estopped to deny. *Merchants' Bank v.*

*State Nat. Bank*, 10 Wall. 604, 19 L. Ed. 1008; *Antrim Iron Works v. Anderson*, 140 Mich. 702, 104 N. W. 319, 112 Am. St. Rep. 434; *General Cartage & S. Co. v. Cox*, 74 Ohio St. 284, 78 N. E. 371, 113 Am. St. Rep. 959; *Bentley v. Doggett*, 51 Wis. 224, 8 N. W. 155, 37 Am. Rep. 827; *Fishbaugh v. Spunaugle*, 118 Iowa, 337, 92 N. W. 58; *Banks Bros. v. Everest*, 35 Kan. 687, 12 Pac. 141. The fact that Shelor, the general agent of the company, misconstrued the instructions given him concerning the execution of the particular bond, alone, will not serve to defeat his principal's liability thereon. His acts were done within the scope of his apparent authority, and were relied upon by those whose duty it was to approve the bond.

To defeat a recovery on the bond, the principal reliance of the surety company is in the action of the judge of the superior court in ordering the execution of a substituted bond. The circumstances under which the order was made are as follows: On February 11, 1913, there was sent from the home office of the surety company in New York the following telegram:

"Clerk superior court Oklahoma county, Oklahoma City, Okla. National Surety Co. will not recognize and is not bound upon the purported supersedeas bond dated Jany. twenty-fifth, filed in case Mary Miozrany against Osage Coal & Mining Co., purported to be executed its behalf. H. S. Shelor has not power to bind it.

    "[Signed]                    NATL. SURETY CO."

On the same day, said company addressed a letter to the clerk of the superior court, confirmatory of its telegram, in which it denied Shelor's authority to execute the bond as its attorney in fact, and which letter is, in part, as follows:

"And this is to notify you that the National Surety Co. repudiates the attempted execution by Mr. Shelor, and will not recognize any obligation under said purported bond."

This letter was received by the clerk and filed February 15, 1913, and on the same day, without notice, either to the obligee of said bond, or to her attorneys of record in said court, or in fact to any one except the foregoing communications to the clerk, the court, *sua sponte,* made and caused to be entered the following order, omitting caption:

"Now on this 15th day of February, 1913, the above-entitled matter comes on for hearing upon the letter of National Surety Company, attempting to repudiate supersedeas bond heretofore given on January 25, 1913; and, the court being fully advised in the premises, it is hereby ordered, adjudged, and decreed that the defendant be, and it is hereby, allowed 10 days from this date in which to file substituted bond in lieu of bond heretofore filed on January 25, 1913, and execution stayed for the period of 10 days from this date.

"[Signed]     EDWARD DEWES OLDFIELD, *Judge.*"

Presumably the bond executed by Hailey, Bollinger, and Busby was given pursuant to the foregoing order. The latter bond is identical in its provisions with the surety company bond previously executed. The summary action of the superior court is defended in this court on the ground that, as that court had jurisdiction of the case at the time, it could, in the interest of justice, permit or order any bond to be amended or a new bond to be given: that as to a supersedeas bond, power to amend remains in the trial court until the appellate court has acquired jurisdiction on appeal, and the proceeding to amend or order a new bond is incidental and informal,

ai d no notice thereof is required; and that even though a notice is required, the failure · to give it affects only the regularity of the proceedings, and the order made cannot be collaterally attacked, or ignored as void. To this claim in its entirety we cannot give our assent, though it be conceded that at the time the trial court yet retained a general jurisdiction of the case, and under proper circum- stances could rightfully have required the making of a new or amended · bond, or, upon failure so to do, have vacated its order, staying or superseding execution on the judgment. *In re Epley,* 10 Okla. 631, 64 Pac. 18; 3 C. J. 1313.

The case, as we see it, is not one involving the power of the trial court, in which an action still remains, to require a party to the action to give a new or amended bond. Indeed, in the case at hand, no objection had been made to the surety company bond. In all respects it met the statutory requirements; its execution, we have seen, was sufficient; it was duly filed and approved; and no complaint was made that the sureties thereon were not solvent. No question as to its sufficiency had arisen or was considered, save and except a controversy between the surety company and Shelor, its agent, in respect to certain instructions given the latter by the former. In the bond, after reciting the judgment rendered, the sureties obligated themselves to pay the condemnation money and costs in case the judgment of the trial court should be affirmed in whole or in part. By operation of law the bond constituted a contract by which the obligee, in consideration of the stay of execution on the judgment, was the beneficiary. It contained no provision permitting the sureties to terminate their liability in any manner, and we know of no statute authorizing the surety upon

a supersedeas bond, after its due execution, to terminate his liability, assuming that the Legislature could lawfully enact such a statute. In this connection it is stated in section 3958, Elliott on Contracts:

"In most states, under the common law, if the consideration for the surety's contract is entire, and has been executed fully, he cannot terminate his liability by notice, but he remains liable indefinitely; but if the surety's contract is executory—if his liability depends upon some future act of the creditor or obligee, and no time has been fixed in the contract—the surety can terminate his liability by notifying the creditor or obligee that he withdraws, remaining liable, however, for any rights previously acquired by such creditor or obligee. The surety may expressly provide in his contract for the right to terminate his liability by notice, and where he has reserved that right, such notice must be clear and explicit, and the right exercised in a reasonable manner. The right to terminate his contract is sometimes given a surety by statute."

The obligors were bound by the terms and conditions of their bond. *Richardson et al. v. Penny*, 10 Okla. 32, 61 Pac. 584. Their obligation could not be terminated at the will of the surety, even by notice. *Calvert et al. v. Gordon, Ex'x*, 7 B. & C. 809, 6 L. J. K. B. (O. S.) 187, 14 E. C. L. 361. They did not retain the right to withdraw from the bond, even upon notice. *Crane v. Newell*, 2 Pick. (Mass.) 612, 13 Am. Dec. 461. The rule governing their liability is aptly stated in *Meek v. State ex rel. Linville*, 172 Ind. 654, 88 N. E. 299, 89 N. E. 307, in the following language:

"There having been no conditions inserted in an appeal bond by which either the principals or sureties could be discharged from its obligations after final execution by a mere notice to any one, and no law allowing it, the bond,

after signing and delivery, could only be rescinded by mutual agreement of the parties and the officer or court having jurisdiction over it, or by a competent court in a proper proceeding upon a showing of fraud, duress, or other grounds sufficient to invalidate its execution, and the mere giving of a notice of a desire to rescind after the right of appeal had accrued by virtue of the filing of the bond would be ineffectual to annul its force."

If the order of the trial judge, directing the giving of a substituted bond, was intended to work a release of the sureties on the bond, which is not entirely clear, such order or judgment was so obviously void as to require neither the citation of authorities nor further reasoning to convince all of its failure so to do. Vested rights may not thus lightly be impaired or destroyed. Shelor, the agent, having authority to execute the bond, as to third parties uninformed of his private instructions, and no other question being before the superior court, any action of the judge of said court, taken without notice to the obligee, and without the form of trial, was a mere nullity, and could be vacated at any time, or by any person affected thereby. Rev. Laws 1910, sec. 5274; *Justices of the Inferior Court v. Woods*, 1 Kelly (Ga.) 84; *Irwin v. Crook*, 17 Colo. 16, 28 Pac. 549; *Napier v. Gidiere*, 7 Rich. Eq. (S. C.) 254; Brandt, Suretyship & Guaranty, sec. 704.

Plaintiff having in the trial court dismissed her action against the sureties on the second bond, the question of their liability thereon, or of the rights of the surety company as against them, was neither before, nor considered by, said court, and nothing in this opinion is intended to determine or affect any such rights.

The surety company having obligated itself to pay the amount of the judgment rendered against the mining company, together with costs, upon the affirmance of the judgment of the trial court, and not having done so, and being without lawful excuse in the premises, its liability follows.

The judgment of the trial court is affirmed.

All the Justices concur.