LAWRENCE REILLY, Appellant, *v.* GEORGE N. KANENBLEY, Respondent.

First Department, July 14, 1922.

Landlord and tenant — action to recover for injuries suffered by infant child of tenant when she fell through opening in back yard fence — error for trial court to set aside verdict for plaintiff on ground of contributory negligence of parents in not anticipating that child would fall through hole, where parents had no knowledge of existence of hole — new trial cannot be granted plaintiff for inadequacy of verdict, where motion not made at trial.

In an action to recover for injuries suffered by a child when she fell through a hole in a back yard fence on premises rented by her parents from the defendant, wherein it appeared that the hole in question had existed for several days to the knowledge of the defendant's janitor, it was error for the trial court to set aside the verdict in favor of the plaintiff on the ground that the child's parents were guilty of contributory negligence in not anticipating that the child might fall through the hole in question, where the uncontradicted evidence was that the parents had no knowledge of the existence of the hole in the fence.

A new trial cannot be granted the plaintiff on the ground that the verdict was inadequate, inasmuch as the plaintiff failed to make a motion on the return of the verdict to set it aside as inadequate.

APPEAL by the plaintiff, Lawrence Reilly, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Bronx on the 10th day of February, 1921, upon the dismissal of the complaint after a verdict for $250 in favor of the plaintiff had been set aside.

*C. Everett Hunt* of counsel, for the appellant.

*Benjamin C. Loder* [*H. H. Brown* of counsel], for the respondent.

DOWLING, J.:

Defendant is the owner of two apartment houses known as 445 and 447 East One Hundred and Thirty-seventh street, in the borough of The Bronx, New York city. These two apartment houses had a continuous frontage on One Hundred and Thirty-seventh street, and also had a back yard used in common by the tenants of both houses, the same having a concrete flooring. This back yard was seventeen feet one inch in depth, and fifty-four feet in width, and the whole space was inclosed by a fence. It was used by the tenants of both houses for hanging out clothes, cleaning rugs and similar purposes, and their children played therein. In one corner of the yard, behind the apartment house known as 445, there was a telephone pole, which stood in the corner formed

by the junction of the westerly and rear walls of the fences on the lot, and on this pole there were spikes extending from one foot from the ground upwards beyond the top of the fence. At the time of the accident two or three boards were missing from this fence for the whole length thereof at that particular point, the boards being each eight to ten inches wide, thus making a hole about twenty inches wide by six feet long. The open space created by the absence of these boards began at a point one foot from the ground and at a point opposite the first spike on the pole, and this condition had existed for eight to nine days prior to the accident.

The infant on July 23, 1919, was five and one-half years of age, and her parents had resided in the premises 447 for a period of six years. Just prior to the accident the child was seen with her right foot on the spike within a foot of the hole, her left foot being on the fence at the top of the boards which still remained in, which would leave her left foot in the opening caused by the absence of the two boards referred to. Within five or six seconds she was heard to fall, and she was found on the ground of the property adjoining the yard in question, having fallen down an embankment, the level of which was approximately twenty feet below the level of the back yard of defendant's property.

The only reasonable inference from the testimony is, that she fell through the opening caused by the absence of the two boards in the fence of defendant's property, a condition which had existed eight to nine days before the accident, to the knowledge of his janitor.

The apartment in 447 occupied by plaintiff's parents was one flight up. The plaintiff's mother testified that she had never seen the hole in the fence before the accident, and observed it for the first time when she returned from the drug store after the child had fallen through the hole.

The plaintiff called as a witness the janitor of premises 447 East One Hundred and Thirty-seventh street, employed by the defendant, who admitted that in July, 1919, two of the boards were out of the fence in question; that they had been out eight to nine days, being two boards from the bottom about ten inches wide each for the full width of that part of the fence; and that after the accident he had nailed the boards up. He also admitted that the back yard was used for drying clothes, cleaning carpets and different things, and was used by everybody; that lines were there for the use of the tenants; that different children from both houses played there, and that such a state of facts had existed for the three years that he had been living in the premises. He was never

told not to allow the tenants to use the yard, nor not to allow the children to play there. The plaintiff also called as a witness the son of the janitress of 445, who was a witness to part of the actual occurrence, and who testified as well to the absence of the boards.

The defendant called no witnesses.

The learned trial court submitted the issues to the jury in a most satisfactory charge, eminently fair and covering every phase of the questions involved, to which no exception was taken by either side. He instructed them that before plaintiff could recover she must establish by a fair preponderance of credible evidence of probative force, that proved the fact that the injuries received by the child were caused solely and alone by the negligent manner in which the fence was maintained; and that the parents of the child were guilty of no act or omission amounting to negligence which contributed to the happening of the accident; that unless she established both of these to their satisfaction, the jury must find for the defendant. He further charged that, even if they found the defendant was negligent in keeping this fence for nine days with the two boards absent, if they found that the parents were negligent, then no matter how much they might sympathize with the child, the defendant must not be called upon to respond. He charged that unless they found that the child fell through the hole in the fence, the defendant was not liable, and the verdict would have to be in his favor. Further, that they must find that the fall was caused by defendant's negligence, and that that proof must be furnished by the plaintiff. He further charged them that, in the matter of contributory negligence, the mother was in charge of the child, the father being absent at his employment, and the mother living one flight up from the yard with her windows looking out on that yard, that if she knew of the hole in the fence, or ought to have known of it, the jury should determine whether she was guilty of negligence in permitting her child to play in that yard with a pole immediately adjoining the fence, holding a spike so close to the ground as to enable the infant plaintiff to get upon this spike and reach the hole in the fence and thus fall through. He instructed them that if the mother under these circumstances was negligent in permitting her child to play in the yard with that existing condition, then that negligence of the mother was to be imputed to the child and she should not have any recovery. He also charged them that the free access through the hallway or cellar provided by the defendant to the yard in question, and its use by all the families in the building, created an easement in the yard, and from the absence of any restrictive words in the rental to

the plaintiff's father, it seemed to have been the manifest intention of the parties that this should be so, as there were no other apparent purposes to which the yard could be subjected than the use made of it by these tenants. He further charged them that the plaintiff must show that the fence was in a defective condition, and that such condition was the cause of the injury to the infant plaintiff; that she must prove that defendant had actual notice of such condition and failed to remedy it, or that it had been in such a condition for such a length of time as to permit them to infer notice. If they found all these facts, then should defendant have anticipated that such an accident would occur, that is, that a child would climb on the spike and fall through the fence.

The jury found a verdict in the case of the infant for $1,000 and in the case of her father for $250.

The learned trial court has set aside this verdict upon the ground that, if it was negligence for the owner not to have anticipated that this child might climb through the opening in the fence, it was equally negligent for her parents, who allowed her to play there with full knowledge of the situation, not to have anticipated the same thing; and he also set aside the verdict as contrary to the evidence and granted the motion to dismiss the complaint, which was made at the close of plaintiff's case.

We think that the error of the learned trial court was due to the failure to notice that the mother of the plaintiff, who was said by him in his charge to the jury to be responsible for, and in charge of, the child, testified directly that she never saw the hole in the fence or knew anything about it until after the accident, and that there is no testimony whatever that the father ever knew anything about the condition of the fence.

Upon this record it is uncontradicted that the parents of the infant had no knowledge whatever of the dangerous condition of the fence, but knowledge thereof was brought home to the defendant through his janitor for a period of at least eight to nine days before the accident. The plaintiff has fully met the test imposed upon her by the learned trial court in all particulars.

The amount of the recovery is not attacked by the defendant as excessive. Plaintiff's counsel asks that if the judgment be reversed, she be granted a new trial of the issues upon the ground that the amount of the verdict of the jury in the case was inadequate; but no motion was made upon the return of the verdict to set it aside as inadequate, and it is too late to raise that question for the first time upon appeal.

The judgment appealed from should be reversed, with costs to

appellant, and the verdict of the jury reinstated and judgment directed thereupon.

CLARKE, P. J., LAUGHLIN, SMITH and GREENBAUM, JJ., concur.

Judgment reversed, with costs, and verdict reinstated and judgment ordered to be entered thereupon, with costs.